The appellant, Freddie Lee Wright, appeals the circuit court's dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. Wright is scheduled to die in Alabama's electric chair on March 3, 2000.
In 1979, Wright was convicted of murdering Warren and Lois Green during the course of a robbery. This Court reversed Wright's conviction and remanded the case on the authority of Beck v.Alabama, 447 U.S. 625 (1980), because Alabama's death penalty law in effect at the time of Wright's trial prevented a jury from finding a defendant guilty of a lesser-included offense. Wright v.State, 407 So.2d 565 (Ala.Cr.App. 1981). In 1982, the United States Supreme Court remanded the case for further consideration after its decision in Hopper v. Evans, 456 U.S. 605 (1982), which refined that Court's decision in Beck by holding that instructions on lesser offenses must be given only when the evidence supports the instruction. Alabama v. Wright, 457 U.S. 1114 (1982). On remand, we affirmed Wright's conviction and sentence of death.Wright v. State, 494 So.2d 726 (Ala.Cr.App. 1985), 494 So.2d 745
(Ala. 1986), cert. denied, 479 U.S. 1101 (1987).
In 1987, Wright filed a coram nobis petition (now a Rule 32, Ala.R.Crim.P., petition) in the Mobile Circuit Court. After an evidentiary hearing, Wright's petition was denied. We affirmed the denial of that postconviction petition. Wright v. State,593 So.2d 111 (Ala.Cr.App. 1991), *Page 214 
cert. denied, 506 U.S. 844 (1992).
In 1994, after he had exhausted his remedies at the state level, Wright filed a habeas corpus petition in federal court. The habeas corpus petition was subsequently denied; the denial was affirmed on appeal. Wright v. Hopper, 169 F.3d 695 (11th Cir.), cert. denied, ___ U.S. ___, 120 S.Ct. 336 (1999).
On February 24, 2000, eight days prior to Wright's execution date of March 3, 2000, he filed a second postconviction petition in the Mobile Circuit Court. Wright raised only one issue in that petition. He argues that Alabama's method of execution — the electric chair — constitutes cruel and unusual punishment, and thereby violates the United States Constitution. The trial court, adopting the State's proposed order, dismissed the petition; this appeal followed. Wright's notice of appeal was transmitted to this Court on February 29, 2000, just days before his scheduled execution date. Wright has filed a motion requesting that we stay his execution.[1]
This Court, on direct appeal, stated the facts surrounding Wright's conviction and sentence to death:
 "[A]round 10:30 on the morning of December 1, 1977, Mr. Green [one of the victims] had cashed checks in the amount of $900 at a local bank and placed the money in a red bank bag. Shortly before noon, it was discovered that Mr. and Mrs. Green had been tied together and shot in their Western Auto Store in Mount Vernon. The money was missing from the cash register, and a television, a stereo component system, and several watches were also missing from the store. Mr. Green was not wearing the Seiko watch he had been wearing earlier that morning. His family had given him this watch as a birthday present on November 30, 1977.
 "Doris Lacey Lambert testified that, on the 2nd day of December of 1977, the defendant told her that `he had went out with some of his friends,' `Craig, Roger, and "Gill Man,'" to Mount Vernon and that `he killed two people' with a gun in a Western Auto Store.
 "On cross examination, Ms. Lambert admitted that she had one child by the defendant but denied making the statement that `before she would see another woman have him she would see him dead' after she learned that the defendant was engaged to another woman. She admitted that she had been convicted of shoplifting.
 "Roger McQueen testified that he had been convicted of armed robbery and was going to plead guilty to first degree murder for the Mount Vernon killings. He `considered himself a guilty participant in this murder.' McQueen stated that he and Craig lived in the same apartment complex in Mobile. On December 1, 1977, they took Craig's car and picked up the defendant and Tinsley. About one week before, at his suggestion, a decision had been made between him and Craig `to rob some store in Jackson.' The defendant and Tinsley learned of the plan and agreed to go. On the way to Jackson, they stopped in Mount Vernon to get some tape to repair a torn seat in Craig's car.
 "McQueen went in the Western Auto Store to purchase the tape. Wright came in later armed with a gun and told Mr. and Mrs. Green to come out from behind the desk into a `little room'. The defendant told McQueen `to go to the register' and Tinsley entered the store. McQueen removed the money from the register and Tinsley, at the defendant's direction, got some extension cord to tie up Mr. and Mrs. Green. The defendant and Tinsley then tied up the Greens. The defendant made several trips from *Page 215 
the store to Craig's car and took a T.V. set and a stereo system. Tinsley took the watches. The defendant also had Mr. Green's watch. McQueen also testified that Craig told him to `make sure the people were taken care of' because `the people would have identified the car.' The defendant was the last one to leave the store. When he returned to Craig's car, the others `asked him what took place and he said that he had took care of both peoples.' . . . `He said he had shot both peoples and also Reginald Tinsley agreed with him because he went back into the store the last time.' McQueen asked the defendant to show him the empty cartridges if the defendant shot both people and the defendant handed McQueen `two empty cartridge[s] from the gun.' The gun was a `nickel plate .38 with some kind of carving handle, a wooden handle.' McQueen testified that they left Mount Vernon and went to Craig's sister's house where they divided the money he had taken from the store. The defendant gave the T.V. to Craig and the stereo was taken to where the defendant `stayed at'. McQueen left the `bank carrier' that he had taken at Craig's sister's house."
494 So.2d at 733-34.
Wright argues that the trial court erred in finding that the issue presented in his petition, i.e., that the use of the electric chair as a means of carrying out the death penalty constitutes cruel and unusual punishment, was procedurally barred because, he says, his claim "is rooted in several recent developments that have occurred since he filed his original petition for relief in Alabama state courts in 1987." (Wright's brief to this Court at 10.)
We do not agree. The trial court correctly found that this claim is procedurally barred in this postconviction proceeding. Rule 32.2(c) specifically states that a petition raising a constitutional claim must be filed within two years after this Court issues a certificate of judgment. See Tarver v. State,761 So.2d 266 (Ala.Cr.App. 2000). As we stated in Tarver, this Court has consistently applied the procedural default grounds in Rule 32 in death penalty cases.
This Court issued the certificate of judgment in Wright's case on September 30, 1986. According to Rule 32.2(c), Wright had two years from that date to file a Rule 32 petition raising this constitutional claim.[2] He did not. Wright's petition, filed approximately 12 years after the issuance of the certificate of judgment, is procedurally barred by the limitations period in Rule 32.2(c).
We note that Wright did not argue in his petition or on appeal from the dismissal of that petition that this claim is made in the basis of newly discovered evidence pursuant to Rule 32.1(e), Ala.R.Crim.P.
The circuit court's order dismissing Wright's postconviction petition is due to be, and is hereby, affirmed. Further, Wright's motion for a stay of execution is due to be denied.
AFFIRMED; MOTION FOR STAY OF EXECUTION DENIED.
Long, P.J., and McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] A motion to stay execution was also filed in the Alabama Supreme Court. That court denied the motion on February 25, 2000.
[2] In 1986, Alabama had in effect temporary rules of criminal procedure. The temporary rule corresponding to Rule 32 was Rule 20. It also contained the two-year limitations period. Rule 20.2(c), Ala.R.Crim.P.Temp.