The State filed this petition for a writ of mandamus directing Judge William Shashy, of the Fifteenth Judicial Circuit, to rescind discovery orders issued to Holman Prison, the Alabama Department of Forensic Sciences, and the Tallapoosa County District Attorney's Office.[1]
Hooks was convicted of capital murder and was sentenced to death by electrocution. We affirmed his conviction and sentence. Hooks v. State,534 So.2d 329 (Ala.Crim.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050 (1989). In 1989, Hooks filed a petition for postconviction relief pursuant to Rule 20, Ala.R.Crim.P.Temp. (now Rule 32, Ala.R.Crim.P.) Sometime after the petition was filed Hooks filed a request for production, seeking discovery of all materials maintained by Holman Prison and the Alabama Department of Forensic Sciences regarding executions in Alabama since 1976 and also seeking discovery of records of the Tallapoosa County District Attorney relating to Hooks's criminal and drug-related offenses.[2] In June *Page 478 
2000, Judge Shashy granted Hooks's request. The State filed a motion to reconsider. That motion was denied; this petition followed.
All three appellate courts of this State have used mandamus as a method of reviewing a trial court's ruling on a discovery motion. Ex parteCompass Bank, 686 So.2d 1135 (Ala. 1996); Ex parte Heilig-MeyersFurniture Co., 684 So.2d 1292 (Ala. 1996); Ex parte Mobile Fixture Equip. Co., Inc., 630 So.2d 358 (Ala. 1993); Ex parte Nissei SangyoAmerica, Ltd., 577 So.2d 912 (Ala. 1991); Ex parte Monk, 557 So.2d 832
(Ala. 1989); Ex parte Lang, 738 So.2d 1288 (Ala.Civ.App. 1999); and Statev. Matthews, 738 So.2d 944 (Ala.Crim.App.), aff'd, 724 So.2d 1143 (Ala. 1998). As the Alabama Supreme Court stated in Ex parte Compass Bank:
 "Mandamus is the `proper means of review to determine whether a trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders so as to prevent an abuse of the discovery process by either party.' Ex parte Mobile Fixture Equipment Co., 630 So.2d 358, 360 (Ala. 1993). Mandamus is an extraordinary remedy requiring a showing that there is: `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991); Ex parte Johnson, 638 So.2d 772, 773 (Ala. 1994).
 "Because discovery involves a considerable amount of discretion on the part of the trial court, the standard this Court will apply on mandamus review is whether there has been a clear showing that the trial court abused its discretion. Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991); Ex parte McTier, 414 So.2d 460 (Ala. 1982)."
686 So.2d at 1137.
The present mandamus petition concerns three discovery orders issued by Judge Shashy. The first order, directed to Holman Prison, ordered the prison to produce, among other things,[3] all
 "[r]ecords, files, documents, and other materials in Holman Prison's possession, custody, or control regarding executions in the State of Alabama since 1976, including but not limited to:
 "(a) documents sufficient to show the identity of those executed;
"(b) all photographs of these executions;
 "(c) documents sufficient to show the identity of all witnesses to each execution;
 "(d) documents sufficient to show the location of each execution;
 "(e) the death certificate of each individual executed;
 "(f) pathologist reports on the cause of death of those executed;
 "(g) documents sufficient to show the origin, age, condition, manufacturer and maintenance of the equipment used for these executions;
 "(h) all records of the procedures followed in maintaining the equipment *Page 479 
 used for executions and all records of the procedures followed to prepare the equipment for each execution;
 "(i) documents sufficient to show the identity, training, position and background of all persons involved in operating the execution equipment;
 "(j) reports completed following each execution; and
 "(k) all documentation and reports of all complications occurring while carrying out any execution, including the executions of Horace Franklin Dunkins and John Louis Evans."
The second discovery order, directed to the Alabama Department of Forensic Sciences, ordered the production of the same information that Holman Prison had been ordered to produce[4]. The third discovery order, addressed to the Tallapoosa County District Attorney, ordered the district attorney to disclose the following items:
 "Criminal offenses (both adult and juvenile), incarceration, detention, disciplinary, medical, psychological, psychiatric, and mental health records, files, documents, and other materials concerning Mr. Hooks that are in the Tallapoosa County DA's possession, custody, or control.
 "Records, files, documents, and other materials concerning Mr. Hooks's drug use that are in the Tallapoosa County DA's possession, custody, or control."
 I.
The State argues that the request for the production of the information concerning prior executions in Alabama is procedurally barred because it presents an issue that could have been raised at trial or on direct appeal, but was not; therefore, the State argues, the information should not be the subject of a discovery order. See Ex parte Land, 775 So.2d 847
(Ala. 2000). Hooks argues in response that Alabama's method of execution — the electric chair — constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
This Court has repeatedly held that this claim is procedurally barred in a postconviction proceeding as one that could have been raised at trial or on direct appeal but was not. Tarver v. State, 761 So.2d 266
(Ala.Crim.App. 2000); Pierce v. State, [Ms. CR-96-1668, March 2, 1999] ___ So.2d ___ (Ala.Crim.App. 1999), remanded on other grounds, [Ms. 1981270, September 1, 2000] ___ So.2d ___ (Ala. 2000); Weeks v. State,568 So.2d 864 (Ala.Crim.App. 1989), cert. denied, 498 U.S. 882 (1990);Harrell v. State, 526 So.2d 646 (Ala.Crim.App.), cert. denied, 488 U.S. 934
(1988). We have also held that this claim was barred based on other preclusion grounds in Rule 32, Ala.R.Crim.P. See Wright v. State,766 So.2d 213 (Ala.Crim.App. 2000) (claim barred by the two-year limitations period in Rule 32.2(c)); Harrell v. State, 526 So.2d 646
(Ala.Crim.App. 1988) (claim barred because it was raised and rejected on direct appeal).
Other state and federal courts have likewise held that this claim was procedurally barred in the postconviction context. See Smith v. Anderson,104 F. Supp.2d 773 (S.D.Ohio 2000); Sawyer v. Whitley, 772 F. Supp. 297
(E.D.La.), aff'd, 945 F.2d 812 (5th Cir. 1991), aff'd, 505 U.S. 333
(1992); Jones v. Whitley, 938 F.2d 536 (5th Cir. 1991); *Page 480 Dawson v. State, 673 A.2d 1186 (Del.), cert. denied, 519 U.S. 844 (1996).
Moreover, in Pierce we stated:
 "The appellant's last argument is that his claim that death by electrocution constitutes excessive, cruel, and unusual punishment is meritorious and should not have been dismissed. We disagree. The circuit court correctly found this claim to be procedurally barred because the appellant could have raised it at trial and on appeal but did not. Rule 32.2(a)(3) and (5), Ala.R.Crim.P.
 "Even if this issue were properly before this court, we would decide it adversely to the appellant. We have repeatedly held that the death penalty is not per se cruel and unusual punishment and that electrocution as a means of capital punishment does not constitute cruel and unusual punishment. Williams v. State, 627 So.2d 985 (Ala.Cr.App. 1991), aff'd, 627 So.2d 999
(Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Boykin v. State, 281 Ala. 659, 207 So.2d 412 (1968), reversed on other grounds, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969)."
The State, citing Ex parte Land, asserts that Hooks has failed to establish good cause for the disclosure of this information because, it says, this claim is procedurally barred.
Whether and to what extent discovery is allowed on a postconviction petition was recently addressed by the Alabama Supreme Court in Land. The Land Court stated:
 "We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997)]; State v. Lewis, 656 So.2d 1248
(Fla. 1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec 937, 526 N.Ed.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill. 2d at 183, 121 Ill. Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey's Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that `an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.' Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala. 1985).
 "We emphasize that this holding — that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discovery procedures within Rule 32.4 Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may *Page 481 
 exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir. 1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987)."
775 So.2d at 852. (Emphasis added; footnote omitted.)
We agree with the State that a claim that is procedurally barred claim in a postconviction petition clearly is not one that entitles a petitioner to relief. If a postconviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery of materials related to that claim. See Land. Thus, Hooks has failed to show good cause for the disclosure by Holman Prison and the Department of Forensic Sciences of the records concerning executions in Alabama since 1976.
Hooks, in the alternative, argues that this claim could not have been raised before it was raised in this petition and that, therefore, it should not be subjected to the procedural default grounds in Rule 32, Ala.R.Crim.P.[5] Hooks cites McNair v. Haley, 97 F. Supp.2d 1270
(M.D.Ala. 2000), in support of this argument. We note that federal courts, in reviewing habeas corpus petitions, which are similar to Rule 32 petitions, have held: "A prisoner's procedural default can be excused . . . if the prisoner can show both cause for the default and actual prejudice resulting from the violation of federal law."97 F. Supp.2d at 1274. Alabama has never recognized any exceptions to the procedural default grounds contained in Rule 32, Ala.R.Crim.P. We have repeatedly stated that the procedural bars in Rule 32 apply equally to all cases, including those in which the death penalty has been imposed. See Wright, supra; Tarver, supra; Brown v. State, 663 So.2d 1028 (Ala.Crim.App. 1995); Johnson v. State, 612 So.2d 1288 (Ala.Crim.App. 1992); Thompsonv. State, 615 So.2d 129 (Ala.Crim.App. 1992), cert. denied, 510 U.S. 976
(1993).
Moreover, Hooks's claim that the circumstances surrounding Horace Dunkins's 1989 execution show that the electric chair inflicts cruel and unusual punishment, because, he says, Dunkins had to be executed twice, is a claim that was addressed by a federal court in Thomas v. Jones,742 F. Supp. 598 (S.D.Ala. 1990); by the United States Supreme Court inLouisiana ex rel. Francis v. Resweber, 329 U.S. 459 (1947), and in both cases determined adversely to Hooks. See also Squires v. Dugger,794 F. Supp. 1568 (M.D.Fla. 1992), reconsideration denied,818 F. Supp. 1485 (M.D.Fla. 1993).
Furthermore, we believe that Hooks could have raised this issue at trial or on appeal. Alabama has used the electric *Page 482 
chair as its method of execution since March 1927, the date set by Act No. 587, Ala. Acts 1923, codified as § 5309, Code of Alabama 1923, for the first use of electrocution to execute capital offenders. That statute is now codified at § 15-18-82, Ala. Code 1975.[6]
Electrocution as a means of carrying out a death sentence has been used since the late 1800s. In 1890, the United States Supreme Court was first confronted with the issue whether electrocution as a method of execution constituted cruel and unusual punishment. See In re Kemmler, 136 U.S. 436
(1890). The United States Supreme Court in Kemmler held that electrocution was not cruel and unusual punishment and was therefore not unconstitutional on that basis. This issue has been presented to the United States Supreme Court in the years since 1890. See Glass v.Louisiana, 472 U.S. 1033 (1985); Zant v. Stephens, 462 U.S. 862 (1983);Proffitt v. Florida, 428 Ul.S. 242 (1976); Louisiana ex rel. Francis v.Resweber, 329 U.S. 459 (1947).
For the reasons outlined above, we hold that Judge Shashy abused his discretion in directing Holman Prison and the Department of Forensic Sciences to disclose information relating to a claim precluded in Hooks's Rule 32 petition.
 II.
The State also contends, without offering supporting argument, that we should order Judge Shashy to rescind his discovery order directing the Tallapoosa County District Attorney to disclose all information that was not work product concerning Hooks's prior offenses, his mental health, and his drug use. Hooks contends that he has established good cause for the disclosure of this information because, he says, it is relevant to his claim that trial counsel's performance was ineffective in failing to "conduct a reasonable investigation of Mr. Hooks's history and background." (Hooks's response at page 9.) We agree. The Supreme Court in Land stated that similar claims are facially meritorious because they present the issue of possible mitigating evidence that could have been presented to the jury.
For the reasons stated above, we direct Judge Shashy to rescind his discovery orders directed to Holman Prison and the Alabama Department of Forensic Sciences to the extent they concern information regarding executions in Alabama since 1976. We leave undisturbed the discovery order directed to the Tallapoosa County District Attorney.
PETITION GRANTED IN PART; DENIED IN PART.
McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] The State's petition also addresses a discovery order directed to the Alabama Department of Corrections. However, Hooks's response to this petition states that on July 21, 2000, the Alabama Department of Corrections complied with the discovery order and forwarded to Hooks's attorney the documents requested. Thus, any issue concerning the discovery order directed to the Department of Corrections is moot and is not before this Court.
[2] Of course, work-product materials in the district attorney's files are not discoverable. See Ex parte Monk, 557 So.2d 832 (Ala. 1989), on remand, 557 So.2d 838 (Ala.Crim.App. 1990).
[3] The discovery order also directs the production of other items in the possession of Holman Prison that concern Hooks's mental health, his prior offenses, and his drug use. The State, however, does not dispute the portion of the discovery order relating to these items.
[4] This discovery order also directed the Department to produce forensic evidence related to the murder; however, the State does not challenge the portion of the order related to that evidence.
[5] Hooks specifically states in his answer that this is not a claim asserting newly discovered evidence under Rule 32.1(e), Ala.R.Crim.P.
[6] Section 15-18-82(a), Ala. Code 1975, states:
 "(a) Where the sentence of death is pronounced against a convict, the sentence shall be executed at any hour on the day set for the execution, not less than 30 nor more than 100 days from the date of sentence, as the court may adjudge, by causing to pass through the body of the convict a current of electricity of sufficient intensity to cause death, and the application and continuances of such current through the body of such convict shall continue until such convict is dead." *Page 483