PER CURIAM.
The State of Alabama filed this petition for a writ of mandamus directing Judge Tracy S. McCooey to vacate the discovery orders relating to Shonelle Andre Jackson’s petition for postconviction relief in which he attacked his capital-murder conviction and sentence of death. Jackson was convicted of murdering Lefrick Moore during the course of a robbery and was sentenced to death. Jackson’s conviction and death sentence were affirmed on direct appeal. See Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999), aff'd, 836 So.2d 979 (Ala.2002).
In July 2003, Jackson filed a Rule 32, Ala.R.Crim.P., petition attacking his conviction and death sentence. He filed an amended petition in March 2004. Jackson then filed two lengthy discovery motions relating to his Rule 32 petition. The State filed detailed objections to each motion. In October 2004, Judge McCooey held a hearing on the discovery motions; after the hearing, she granted the motions. The State then filed this mandamus petition and a request that we stay all action in the circuit court pending this Court’s disposition of this extraordinary petition. By order dated November 30, 2004, we stayed all action in the lower court and allowed the respondents 21 days to answer the allegations contained in the mandamus petition. Jackson has filed an answer in this case and the Department of Human Resources (“DHR”) has filed a brief as ami-cus curiae.
The State asserts that Judge McCooey failed to find good cause before she ordered discovery in this postconviction proceeding, that she erred in ordering discovery on issues that had been held to be procedurally barred, and that she exceeded the limited scope of discovery by ordering discovery of all criminal, mental-health, and correctional records of all witnesses for the State. It cites numerous other grounds in support of the issuance of this writ.[1]
Jackson’s first discovery motion requested the production of the following records: all records of the Department of Corrections (“DOC”) related to Louis Wendell Taylor, Jackson’s father; all medical, psychological, psychiatric, or mental-health records related to Jackson and his father; all records of the Alabama Board of Pardons and Paroles (“the Board”) related to Jackson and his father; and all DHR records related to Jackson and his father.
The second discovery motion requested that the district attorney turn over its entire case file related to the victim’s murder and its case files related to the prosecution of Shonelle Andre Jackson and his three codefendants — Antonio Barnes, Eric Williams, and Christopher Rudolph. The motion also requested “all documents related to all State witnesses who had testified at Jackson’s trial,” including but not limited to the witnesses’ juvenile records, sentencing reports, arrest and conviction records, records of any law-enforcement authority, psychiatric, psychological, and mental-health records, and other records and reports. The motion further stated:
“This request specifically applies to, but is not limited to the following: the *801 Montgomery County District Attorney’s Office, the City of Montgomery Police Department, the Montgomery County Police Department, the Montgomery County Sheriffs Department, the Montgomery Fire Department, the Montgomery County Detention Facility, the Montgomery City Jail, the Montgomery Violent Crime Task Force, the Alabama Department of Youth Services, the Alabama Department of Corrections, the Alabama Department of Forensic Sciences, the Alabama Department of Pardons and Paroles, the Alabama Department of Mental Health and Mental Retardation, specifically including Taylor Hardin Secure Medical Facility and Bryce Hospital and the Montgomery County Juvenile, Family, District and Circuit Courts and the Montgomery Municipal Court.”
The State filed detailed objections to each discovery motion. Judge McCooey held a hearing, at which she stated:
“I hear what you’re saying, but I mean, we’re talking about, you know, someone’s life. Okay. So, I mean, the stakes are as high as they can get. You know, we’re not talking about someone who is just going to prison for a number of years or whatever. I mean, we’re— you know, the stakes are as high as they get. What is wrong with letting them have the discovery? If they are on a fishing expedition, then they’re not going to be able to prove it anyway.”
(Emphasis added.) Judge McCooey then granted unlimited discovery from all departments and agencies listed in Jackson’s discovery motions.
When ascertaining whether discovery is warranted in a Rule 32 proceeding, the court must first determine whether the Rule 32 petitioner has shown good cause for disclosure of the requested materials. As the Alabama Supreme Court stated in Ex parte Land, 775 So.2d 847 (Ala.2000):
“We agree with the Court of Criminal Appeals that ‘good cause’ is the appropriate standard by which to judge post-conviction discovery motions. In fact, other courts have adopted a similar ‘good-cause’ or ‘good-reason’ standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1, cert. denied, 522 U.S. 850 (1997) ]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.Ed.2d at 135....
“... By adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief.”
775 So.2d at 852.
Though Alabama has had little opportunity to define what constitutes “good cause,” in Ex parte Mack, 894 So.2d 764, 768 (Ala.Crim.App.2003), we quoted with *802 approval an Illinois case the Alabama Supreme Court relied on in Land — People v. Johnson, 205 Ill.2d 381, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002):
“ ‘A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988); People v. Rose, 48 Ill.2d 300, 302, 268 N.E.2d 700 (1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery.... Accordingly, the trial court should allow discovery only if the defendant has shown “good cause, ” considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. Daley, 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court’s denial of a post-conviction discovery request only for an abuse of discretion. Fair, 193 Ill.2d at 265, 250 Ill.Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to a “fishing expedition.” ’ ”
894 So.2d at 768-69 (quoting Johnson, 205 Ill.2d at 408, 275 Ill.Dec. at 836-37, 793 N.E.2d at 607-08). See also State v. Lewis, 656 So.2d 1248 (Fla.1994).
The New Jersey Supreme Court in State v. Marshall, 148 N.J. 89, 690 A.2d 1 (1997), a case also cited with approval by the Alabama Supreme Court in Land, stated:
“We anticipate that only in the unusual case will a PCR [postconviction relief] court invoke its inherent right to compel discovery. In most cases, a post-conviction petitioner will be fully informed of the documentary source of the errors that he brings to the PCR court’s attention. Moreover, we note that PCR ‘is not a device for investigating possible claims, but a means for vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 275 Cal.Rptr. 729, 776, 800 P.2d 1159, 1206 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). The filing of a petition for PCR is not a license to obtain unlimited information from the State, but a means through which a defendant may demonstrate to a reviewing court that he was convicted or sentenced in violation of his rights....
“Moreover, consistent with our prior discovery jurisprudence, any PCR discovery order should be appropriately narrow and limited. ‘[TJhere is no post-conviction right to “fish” through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist.’ Gonzalez, supra, 275 Cal.Rptr. at 775, 800 P.2d at 1205; see Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.), cert. denied, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994); State v. Thomas, 236 Neb. 553, 462 N.W.2d 862, 867-68 (1990). However where a defendant presents the PCR court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant’s case and not privileged, the court has discretionary authority to grant relief. See Rules Governing Section 2254. Cases in the United States District Courts, 28 U.S.C.A. § 2254 Rule 6(a); [State v.] *803 Lewis, ... 656 So.2d [1248,] 1250 [(Fla.1994)]; [People ex rel. Daley v.] Fitzgerald, [123 Ill.2d 175, 183,] 121 Ill.Dec. [937,] 941, 526 N.Ed.2d [131,] 135 [(1998)] (noting that ‘good cause’ standard guards against potential abuse of PCR discovery process).”
Marshall, 148 N.J. at 270-71, 690 A.2d at 91-92.
The federal courts have adopted a similar standard for discovery in relation to federal habeas corpus actions.[2] In Murphy v. Bradshaw, [No. C-1-03-053, September 13, 2003] (S.D.Ohio 2003) (not published), an Ohio court stated:
“A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court’s exercise of discretion. Rule 6(a), Rules Governing § 2254 Cases; Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); Byrd v. Collins, 209 F.3d 486, 515-16 (6th Cir.2000). Good cause exists ‘where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief .... ’ Bracy, 520 U.S. at 908-909, quoting Harris, 394 U.S., at 300, 89 S.Ct., at 1091. Conversely, where a petitioner would not be entitled to relief on a particular claim, regardless of what facts he developed, he cannot show good cause for discovery on that claim.”
(Emphasis added.) “This authority [to order discovery in postconviction proceedings] must be exercised with caution, because of the potential for abuse of the discovery process and because of the limited scope of postconviction proceedings.” People v. Williams, 209 Ill.2d 227, 236, 282 Ill.Dec. 824, 830, 807 N.Ed.2d 448, 454 (2004). “[T]he range of issues in a post-conviction proceeding is relatively narrow, and discovery requirements are correspondingly limited.” People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 182, 121 Ill.Dec. 937, 940, 526 N.E.2d 131, 134 (1988).
With these standards in mind, we review the allegations contained in the State’s petition for a writ of mandamus.
I.
The State first argues that Judge McCooey abused her discretion by ordering discovery without first determining whether the petitioner had shown good cause for the discovery.
It is clear from reading the transcript of the discovery hearing that Judge McCooey failed to apply the correct standard when evaluating Jackson’s discovery motions. As stated above Judge McCooey noted the severity of the sentence imposed in the case and stated: “What is wrong with letting them have the discovery? If they are on a fishing expedition, then they’re not going to be able to prove it anyway.”
Because more discovery matters will arise in this case, we take this opportunity to offer the circuit court guidance in such discovery matters.
II.
The State further argues that the circuit court erred in granting discovery of *804 the files of the district attorney’s office related to Jackson’s three codefendants in the capital-murder charges.[3] In Jackson’s discovery motion, Jackson alleged that the files of his eodefendants were necessary to prove his Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim because, he argued, the State failed to disclose “deals or agreements that had been entered into between the prosecution and the co-defendants who testified for the State.”
The exhibits filed with this mandamus petition show that on March 1, 2004, approximately seven months before the hearing on Jackson’s discovery motions, Judge McCooey issued an order dismissing Jackson’s Brady claim as procedurally barred under Rule 32.2(a)(3) and (a)(5), Ala. R.Crim.P. Jackson refers to Judge McCooey’s March 1, 2004, order in several footnotes in his second discovery motion. Jackson also states that he moved that Judge McCooey reinstate those issues she had previously found to be procedurally barred. However, the only order issued by the circuit court included in the exhibits filed with this petition is the order granting the discovery motions. We do know that the claims the circuit court had previously dismissed as procedurally barred were discussed at the discovery hearing. It was Jackson’s contention that discovery would assist him in developing more facts on the issues that Judge McCooey had previously held to be procedurally barred. In Hooks v. State, 822 So.2d 476 (Ala.Crim.App.2000), we held:
“We agree with the State that a claim that is procedurally barred in a postcon-viction petition clearly is not one that entitles a petitioner to relief. If a post-conviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery of materials related to that claim. See Land.”
822 So.2d at 481. “[I]f a particular claim is procedurally defaulted, no matter what facts a petitioner develops, he will not be able to show that he is entitled to relief. Therefore, there can be no good cause to allow discovery of facts underlying a procedurally defaulted claim.” Murphy v. Bradshaw, (No. C-1-03-053, September 13, 2003) (S.D.Ohio 2003) (not published).
Also, a review of the transcript of Jackson’s trial shows that all three code-fendants testified that they had not been offered any deals in exchange for their testimony.[4] Before Jackson’s trial his attorney filed a pretrial motion styled a “Motion to Require the Disclosure of Deals and Inducements.” This motion requested the disclosure of “all deals or inducements of what type whatsoever for any witness to testify against Shonell[e] Jackson at trial.” The record of the direct appeal shows that this motion was granted and that on February 2, 1998, the circuit court gave the State seven days to disclose this information. It appears that Jackson had access to this information before trial.
III.
The State also argues that Judge McCooey erred in allowing discovery of all criminal, mental-health, and correctional records for all witnesses who testified for the State at Jackson’s trial.[5]
*805 In Jackson’s second discovery motion he requested the following:
“All documents relating to any State witnesses at Shonelle Andre Jackson’s trial, including: 1) all juvenile detention, jail, prison, parole, probation, and pre-sentence investigation records; 2) all sentencing reports; 3) all arrest, conviction, and adult and juvenile criminal offense records; 4) all records of any law enforcement authority, including all documents relating to any plea negotiations between any State witness and the State; 5) all records of any detention or court authority; 6) all records of any prosecuting authority; 7) all psychiatric, psychological, and mental health records; 8) all documents relating to any lie detector tests taken by any State witness; 9) all other records any reports.”
The motion further stated that this information was requested from, but was not limited to, the following agencies: the Montgomery County District Attorney’s Office, the City of Montgomery Police Department, the Montgomery County Sheriffs Department, the Montgomery Fire Department, the Montgomery County Detention Facility, the Montgomery city jail, the Montgomery Violent Crimes Task Force, the Alabama Department of Youth Services, the Alabama Department of Corrections, the Alabama Department of Forensic Sciences, the Alabama Department of Pardons and Paroles, the Alabama Department of Mental Health and Mental Retardation (specifically including Taylor Hardin Secure Medical Facility and Bryce Hospital), and the Montgomery County juvenile, family, district and circuit courts and the Montgomery municipal courts.
Jackson contends that these documents related to his Brady claim — a claim Judge McCooey had previously found was procedurally barred. When requested documents relate to a claim that is procedurally barred there can be no showing of good cause for the disclosure of the requested information. See Hooks.
Moreover, a defendant is not entitled to discover the criminal records of a State witness. As this Court stated in Hardy v. State, 804 So.2d 247 (Ala.Crim.App.1999):
“As a general rule, the government need not disclose evidence available to the defense from other sources or evidence that the prosecution could not reasonably be imputed to have knowledge of or control over. Mills v. Singletary, 63 F.3d 999 (11th Cir.1995), cert. denied, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); United States v. Moore, 25 F.3d 563 (7th Cir.), cert. denied, 513 U.S. 939, 115 S.Ct. 341, 130 L.Ed.2d 297 (1994).
“We have held in Alabama in a number of cases that a defendant is not entitled to the general disclosure of the criminal records of the state’s witnesses. See, e.g., Davis v. State, 554 So.2d 1094 (Ala.Crim.App.1984), aff'd, 554 So.2d 1111 (Ala.1989), cert. denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991); Wright v. State, 424 So.2d 684 (Ala.Crim.App.1982) (no absolute right of disclosure of criminal records of state’s witnesses); Mardis v. State, 423 So.2d 331 (Ala.Crim.App.1982); Mack v. State, 375 So.2d 476 (Ala.Crim.App.1978), aff'd, 375 So.2d 504 (Ala.1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980). *806 We have also held that the trial court’s refusal to order the prosecution, pursuant to a defendant’s discovery motion, to provide the criminal record of each expected witness for the state was not a violation of Brady and its progeny. Davis v. State, 554 So.2d at 1100.”
804 So.2d at 286.
Also, Jackson requested and was granted unlimited access to the confidential mental-health records of all 20 witnesses for the State. Allowing unfettered access to this information was contrary to the decisions of the Alabama Supreme Court in Ex parte Western Mental Health Center, 884 So.2d 835 (Ala.2003), and Ex parte Rudder, 507 So.2d 411 (Ala.1987). As the Alabama Supreme Court stated in Ex parte Western Mental Health Center:
“ ‘Although Alabama law does not recognize a physician-patient privilege of confidentiality, the legislature has adopted a psychotherapist-patient privilege.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). The Code section adopting this privilege, § 34-26-2, Ala.Code 1975, states, in pertinent part:
“ ‘[T]he confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.’
“Additionally, ‘[i]t is not disputed that ... medical records, created during the psychiatrist-patient relationship, are included in the confidential relationship and are also privileged.’ Ex parte Rudder, 507 So.2d 411, 413 (Ala.1987). This privilege, we have held, is strongly rooted in public policy:
“ ‘ “[A] psychiatrist must have his patient’s confidence or he cannot help him. ‘The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition .... It would be too much to expect them to do so if they knew that all they say — and all that the psychiatrist learns from what they say — may be revealed to the whole world from a witness stand.’ ”
“ ‘Taylor v. United States, 222 F.2d 398, 401 (D.C.Cir.1955), quoting Guttmacher and Weihofen, Psychiatry and The Law (1952), p. 272.’
“Rudder, 507 So.2d at 413. Furthermore, the meaning of the Alabama psychotherapist-patient privilege statute is clear from the plain language of the statute itself. See United Serv. Stations, 628 So.2d at 504 (citing King v. National Spa & Pool Inst., 607 So.2d 1241, 1246 (Ala.1992)).
“There are five recognized exceptions to the psychotherapy-patient privilege. First, ‘[t]his Court has recognized an exception to the privilege where, in a child custody matter, the mental state of one of the parents is at issue and a proper resolution of child custody requires disclosure of otherwise privileged psychiatric records.’ United Serv. Stations, Inc., 628 So.2d at 504 (citing Harbin v. Harbin, 495 So.2d 72, 74 (Ala.Civ.App.1986)). The Court has also recognized another exception where a defendant in a criminal trial raises the defense of insanity. See Salmon v. State, *807 460 So.2d 334, 337 (Ala.Crim.App.1984). Additionally, Alabama recognizes exceptions for communications relevant in proceedings to hospitalize a patient for mental illness, communications made during a court-ordered examination of the mental or emotional condition of a party or witness, and communications concerning a breach of duty arising out of the psychotherapist-patient relationship. Rule 503, Ala.R.Evid.”
884 So.2d at 840.
Last, the circuit court’s ruling erroneously granted Jackson unlimited access to juvenile records related to all 20 witnesses for the State. Discovery of information regarding juveniles is severely limited by § 12-15-100, Ala.Code 1975. A defendant is not entitled to unfettered access of privileged documents. In Schaefer v. State, 676 So.2d 947 (Ala.Crim.App.1995), this Court held that the defendant was entitled to have the trial court examine in camera privileged records, i.e., the child victim’s psychiatric records and records relating to the child kept by DHR, so that the court could determine whether the privilege yielded to the defendant’s rights of confrontation and cross-examination. See also D.P. v. State, 850 So.2d 370 (Ala.Crim.App.2002). Here, the trial court conducted no in camera examination of the privileged documents.
IV.
The State also argues that the circuit court erred in granting discovery of the juror questionnaires and other documents related to the jury-selection process.
Jackson alleged in his discovery motion that the information on jury selection was necessary to prove his claim of juror misconduct and his claim that his trial counsel rendered ineffective assistance in failing to adequately raise a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and a J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), objection at trial.
The State argues that Jackson cannot show good cause for the disclosure of this information because the juror-misconduct claim is procedurally barred. On March 1, 2004, Judge McCooey dismissed Jackson’s juror-misconduct claim as procedurally barred based on Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P. “If a postconviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery of materials related to that claim.” Hooks, 822 So.2d at 481.
Moreover, the State asserts that this Court on direct appeal addressed the Bat-son and J.E.B. claims and held that the claims were without merit; therefore, it argues, there can be no good cause for discovery of documents relating to the jury-selection process.
A majority of this Court in Woods v. State, [Ms. CR-02-1959, August 27, 2004] — So.2d -, - (Ala.Crim.App.2004), stated:
“Clearly, then, when this court and/or the Alabama Supreme Court has specifically addressed and rejected a substantive claim on direct appeal, whether reviewing for plain or preserved error, a petitioner in a Rule 32 proceeding who raises an ineffective-assistance claim based on that same substantive claim cannot establish prejudice under Strickland.”
(Footnote omitted.) The substantive claims related to Jackson’s ineffective-assistance-of-counsel claims were determined on direct appeal to be without merit; therefore, Jackson can show no good cause for the disclosure of information related to those claims. See Mack.
*808 V.
The State further argues that the circuit court erred in allowing Jackson access to the bullet recovered from the victim’s body and the shell casing found in the area where the victim was killed, which were introduced at Jackson’s trial.
Jackson contended in his discovery motion that this access was necessary to support his claim that his trial counsel had been ineffective for failing to procure a firearm expert who would have testified that the projectile recovered from the victim’s body could have been fired from either Jackson’s 9mm pistol or the .357 pistol belonging to one of his codefendants.
The State contends that Jackson cannot show good cause for access to these items because the State’s expert testified at Jackson’s trial that the bullet recovered from the victim could have been fired from either a 9mm pistol or a .357 pistol.
A review of the record of Jackson’s trial supports the State’s assertion. This evidence was presented at Jackson’s trial; therefore, Jackson’s claim is without merit. Accordingly Jackson can show no good cause for the disclosure of materials related to this claim. See Hooks.
VI.
The State asserts that the circuit court erred in granting discovery of the jail visitor sign-in sheets showing who visited Jackson and his three codefendants while they were in jail awaiting trial.
Jackson argued in his discovery motion that the information related to his codefen-dants was necessary to prove his Brady claim. However, the circuit court dismissed this claim as procedurally barred; therefore, Jackson cannot show good cause for the disclosure of information related to this claim. Hooks, supra.
Moreover, there was no good cause for disclosing the jail visitor sign-in sheets for Jackson because this was information within Jackson’s own knowledge. Certainly, Jackson could inform his Rule 32 counsel of the identities of the individuals who visited him while he was incarcerated. This information was clearly available through other less intrusive means; therefore, Jackson can show no good cause for disclosing information related to this claim. See Ex parte Mack, supra.
VII.
The State also argues that it was error for the circuit court to grant access to the records of various agencies related to Louis Wendell Taylor' — Jackson’s father. Jackson’s discovery motion requested the following:
“Any and all records pertaining to Louis Wendell Taylor generated or maintained by the Alabama Department of Corrections, including but not limited to all intake, assessment, institutional, personal, disciplinary, medical psychological, psychiatric and mental health records, and any other records generated or maintained by any prison, medical facility or provider, or any other entity associated with the Alabama Department of Corrections, including but not limited to Holman Prison, Kilby Correctional Facility, Easterling Correctional Facility, Taylor Hardin Secure Medical Facility, and Bryce Medical Facility.”
The motion also requested records from the DHR and the Board that pertained to Taylor.
Jackson asserted that this information was necessary to show that Jackson’s father had been either in jail or on drugs or abusing alcohol during Jackson’s early years — proper mitigating evidence, he argues, that should have been presented at the penalty phase of his capital trial.
*809 The State argues that this information was available through many other sources and that the requested records are not necessary to support this claim. It further asserts that “for the above agencies to be forced to go through twenty or more years of records for such information is unduly burdensome and time consuming.”
We agree with the State. Clearly, this information was available from Jackson’s father and from other family members. It was not necessary to grant such intrusive discovery when this information was available through many other sources. See Ex parte Mack (a court must consider the burden on the individuals affected by the discovery motion and the availability of the requested evidence through other sources when determining whether a petitioner has shown good cause for the materials or information requested).
VIII.
DHR has filed an amicus curiae brief in which it argues that the circuit court erred in granting Jackson full disclosure of its files related to Taylor without first reviewing those files in camera. It further asserts that granting full discovery of its files violates DHR’s statutory obligation to ensure the confidentiality of its records. See § 38-2-1 et seq., Ala.Code 1975. DHR states in its brief:
“DHR cannot accomplish its duties, including the duty to maintain the confidentiality of our records and to disclose information only when the appropriate steps have been taken by our independent legal staff, when we are left without notice that our records are being sought and when we have no opportunity before an order is entered to provide the Court with information concerning the laws governing our records.
“DHR acknowledges that criminal defendants may obtain access to protected information by establishing that they have a constitutional entitlement to it based on due process principles. Access to information on constitutional grounds is limited to that material .and exculpatory evidence which is essential to the fairness of the trial. Before discovery of protected DHR information may be obtained, however, a court must find that the information contains material and exculpatory evidence essential to the fairness of the trial.”
(DHR’s amicus curiae brief at pp. 8-9.)
According to our holding in Gibson v. State, 677 So.2d 233 (Ala.Crim.App.1994), the circuit court abused its discretion in allowing Jackson unlimited access to DHR’s files. As we stated in Gibson:
“While it is clear that the defendant himself may not peruse the files, this court has said that in cases such as this one, where neither the parties nor the trial court has seen the files requested by the defendant, ‘[A]n appellant is entitled, upon request, to have the trial court conduct an in camera review of the victim’s complete file maintained by DHR in order to determine whether that file contains any exculpatory information.’ Coats v. State, 615 So.2d 1260, 1261 (Ala.Crim.App.1992) (emphasis in the original). See also Pennsylvania v. Ritchie, 480 U.S. [39] at 58, 107 S.Ct. [989] at 1001-02, 94 L.Ed.2d 40 [(1987)].”
677 So.2d at 236. Clearly, the circuit court should have first reviewed the DHR files in camera before granting discovery of those files.
Moreover, the circuit court’s order, which allows access to the Board’s files, directs the Board to violate § 15-22-36(b), Ala.Code 1975. The records maintained by the Board are not subject to inspection. See § 15-22-36(b), Ala.Code 1975. In Ex parte Alabama Board of Pardons & Par- *810 roles, 814 So.2d 870 (Ala.2001), the Alabama Supreme Court stated the following concerning § 15-22-36(b):
“Principles of statutory construction bind this Court to interpret plain language of a statute ‘to mean exactly what it says’ and to engage in judicial construction only if the language in the statute is ambiguous. Ex parte Alabama Great Southern R.R., 788 So.2d 886, 889 (Ala.2000), quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998). The Legislature stated in § 15-22-36(b), Ala.Code 1975, with specificity and particularity, that ‘all other portions of the file shall be privileged.’ A plain reading of the statute indicates that the Legislature created an absolute privilege to provide individuals and entities an unfettered opportunity to provide information to the Board, without exposing the individuals and entities to public scrutiny and potential retaliation. To hold otherwise, this Court would have to engage in improper judicial construction.
[[Image here]]
“Section 15-22-36(b), Ala.Code 1975, clearly and unambiguously establishes an absolute privilege that the Board is legally bound to obey and the circuit court is under a duty to uphold.”
814 So.2d at 872-73.
The State has met its burden of establishing the prerequisites for the issuance of this writ of mandamus. State v. Williams, 679 So.2d 275 (Ala.Crim.App.1996). To grant such broad and unfettered discovery motions as those granted in this case would result in the expenditure of great time, resources, and money for all the affected agencies — over 20 State and non-state agencies and departments. We can find no other case in which the discovery motions were as extensive as the motions filed and granted in this case. A petitioner does not have an unlimited and unqualified right to discovery in a postcon-viction proceeding. In Land, the Supreme Court adopted a standard of good cause— it did not elect to adopt the broader standards for discovery that are contained in the Alabama Rules of Civil Procedure. Our review of this petition and the exhibits filed with the petition shows that the majority of the requested discovery was unrelated to the claims raised in the Rule 32 petition, was unrelated to the case, and appeared to be merely an attempt to conduct a fishing expedition through all of the many and varied department and agency files — a good portion of which contain privileged and confidential information.
IX.
The State last requests that we take this opportunity to adopt procedural safeguards for discovery in Rule 32 proceedings that will protect nonparties to the litigation. The State in its brief contends:
“The facts in Jackson illustrate the shortcomings of current Rule 32 discovery practice and require this Court to bring some adversarial testing and safeguards into the process; at a minimum to ensure the ‘good cause’ standard is being met and that nonparties receive notice that items held by (or relating to) them are being sought prior to the entry of a court order.
“It is time for this Court to apply Rules 37 and 45 of the Alabama Rules of Civil Procedure[6] — in addition to the preliminary ‘good cause’ inquiry — to dis *811 covery in Rule 32 cases. Because the Alabama Rules of Civil Procedure do not apply to Rule 32 cases, according to Rule 32.4, this Court must craft these protections by reviewing the process created in Land, and clarify the legal issues that restrict the discretion of trial courts to grant discovery in Rule 32 in a published opinion. If this Court does not formally adopt Rules 37 and 45 of the Alabama Rules of Civil Procedure, it should, at a minimum, adopt the safeguards contained therein by requiring notice to all parties of the discovery sought, advanced notice to the nonparties who will be subjected to the requested discovery order (with an opportunity to appear and be heard through a reasonable waiting period), as well as the sanctions provision of Rule 45(c) of the Alabama Rules of Civil Procedure, which requires the party seeking discovery to attest to taking ‘reasonable steps’ to avoid imposing undue burden or expense on those subjected to the ever increasing discovery requests generated in these collateral proceedings.”
(State’s brief at pp. 27-28.)
This Court has no authority to adopt procedural rules of court — the sole responsibility for doing so rests with the Alabama Supreme Court. See Ala. Const, of 1901, Amend No. 328, § 6.11. We urge that court to address the problems exemplified by this case at its earliest opportunity.
The circuit court clearly erred in issuing the broad and unlimited discovery orders in this case. For the foregoing reasons, this petition is due to be, and is hereby, granted. We issue the writ and direct Judge McCooey to vacate her rulings on Jackson’s two discovery motions.
PETITION GRANTED; WRIT ISSUED; STAY LIFTED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur; SHAW, J., concurs in part and concurs in the result, with opinion.

. A petition for a writ of mandamus has been used to review issues related to discovery in Rule 32, Ala.R.Crim.P., petitions. See Ex parte Land, 775 So.2d 847 (Ala.2000), and Ex parte Mack, 894 So.2d 764 (Ala.Crim.App.2003).

. Federal habeas corpus actions filed under 28 U.S.C. § 2254 are similar to our Rule 32 proceedings. Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts provides: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.” See also Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997).

.Jackson also requested and was granted access to the district attorney's file on himself. The State does not contest the disclosure of this material.

. This Court may take judicial notice of its own records. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992).

. The consequences of this request are enormous. The State presented 20 witnesses who *805 testified at Jackson’s trial. In addition to Jackson’s three codefendants, the following people testified for the State: the victim’s wife and his mother, five witnesses to the events, five City of Montgomery police officers, three forensic technicians, a medical examiner, and a City of Montgomery fireman.

. Rule 37, Ala.R.Civ.P., entitled "Failure to Make Discovery; Sanctions” states in part (a): "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows .... ” Rule 45, Ala.R.Civ.P., addresses the issuance of subpoenas.