The appellant, Willie Gibson, was indicted for rape in the first degree, a violation of *Page 234 
§ 13A-6-61, Code of Alabama 1975. A jury found Gibson guilty of the offense charged in the indictment, and the trial court sentenced him to 40 years in prison. Gibson also was ordered to pay all expenses for the counseling and rehabilitation required for the victim, L.F.
 I
Gibson argues that the trial court erred in refusing to allow disclosure of the contents of the victim's file at the Alabama Department of Human Resources, thus violating the Sixth Amendment Confrontation Clause. Alternatively, Gibson argues that the trial court erred in not reviewing the victim's DHR file in camera to determine whether it held information material to Gibson's defense.
Gibson's argument that the trial court's ruling violated the Confrontation Clause must fail. The United States Supreme Court has held that "the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." Pennsylvania v. Ritchie, 480 U.S. 39, 52,107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (emphasis in original). "The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." Id. Because Gibson's trial counsel had the opportunity to fully cross-examine the victim in this case, there was no violation of the Confrontation Clause.
Whether the trial court erred in not viewing L.F.'s DHR records in camera is a more difficult question. On the second day of trial, the defendant issued a subpoena duces tecum to the Alabama Department of Human Resources, asking for all the records pertaining to L.F. The trial court denied the Department's motion for a protective order, on the basis that the Department was not a party in the case. He then said he was disallowing the subpoena duces tecum, because, it was "the State's opinion by the district attorney that [sic] there is nothing else contained in that Human Resources file that is exculpatory or discoverable under Brady [v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]." The hearing on the matter ended with the following:
 "THE COURT: Okay. Let me say that the subpoena duces tecum was issued — That amounted to a court order from this court to the DPS — I keep calling them DPS. DHR, as I understand it, has a representative here at court with the records, that those records have not been revealed to either party nor to myself, have not been asked to have been revealed. I am looking at the excerpt from the State v. — Ex parte State Farm, 529 So.2d at 576. I am reading from a brief filed by the attorney for DHR that says, 'The trial court is . . . to review in camera all of the requested records and files and to determine whether the information contained . . . is essential and not otherwise reasonably available to the petitioner's civil case.' And I want to say that I do not want to assume that responsibility. I cannot assume that responsibility in a first degree rape case because I do not represent the defendant. I am not a lawyer in this cause. I do not know what this case is about. I do not know what the defense is. I do not know what would be material or what would not be material or essential in this case at this point in the trial, and I certainly do not want to assume that responsibility to make that determination for or against either party. This case is important to both parties, and I cannot assume that responsibility to make that determination and to ask the trial court to make such — take on such a responsibility as that without knowing what defenses are — what the defense is in the case or what the case is about [— that] is asking the trial court to assume too much duty and responsibility, and the appellate courts ought to reassess [their] thinking in that regard because I cannot, and I just will almost say I will not assume that responsibility because this man is facing ten years to life, and this victim is facing either being — having redress for her grievances or not. And that's too much responsibility for me to assume without being a party to this case, without being a lawyer in this *Page 235 
case, without knowing anything about what the State's case is or what the defendant's case is, and I cannot make a determination of what might be material and what might not be material from some file, and I just cannot do it and will not do it at this point in the trial. I don't think that issue has to be reached. I think the material would have been discoverable under the Brady ruling, the State was under a duty to furnish to the Defendant any exculpatory material under the Brady ruling, and that would have been a part of the discoverable material, if there was such material in that DHR file, and it would have been the duty to have supplied that to the defendant and the state has said that it has supplied to the defendant all material or evidence that would have been discoverable under the Brady ruling in this case, and we have to take the State's word on that until it is shown otherwise somewhere else down the line or unless you have something to the contrary at this time, Mr. Powell, that you want to put in the record.
 "MR. POWELL [appellant's counsel]: The only thing I would like to say is now that we know that Pam Leech is the worker who was a part of this discovery material, now that we know that, I would like Your Honor to issue a subpoena for Ms. Leech on behalf of the defendant.
"THE COURT: Well, I believe she's —
 "MR. WEATHERS [prosecutor]: She's already subpoenaed for the State, Your Honor, and in the courthouse at this time.
 "THE COURT: She has been subpoenaed and the subpoena was executed, and if you want to have her subpoenaed yourself or if she comes into the courtroom I'll direct her to be available to testify.
 "MR. POWELL: I would think if the State would make her available to us without a subpoena, that will be fine.
 "THE COURT: Anything else? Do you have anything else you want to put in the record?
 "MR. WEATHERS: No, sir. Our only objection was to the confidentiality of the records, and I think that's been taken care of.
 "THE COURT: And do you have anything else you want to put in the record?
 "MR. POWELL: Of course, Judge, we would like to see if — and make a determination, since the burden is on me to defend this client, I would like to look at the file, obviously, without the names, and let me make the determination as to whether or not it is —
 "THE COURT: Well, as I stated during our discussion before we went on the record, if after I hear this entire case and know what the case is about and what the defenses are, on a motion, post-judgment motion in the event of conviction, I think I would be in a much better position at that time to look at that file and see whether or not there was anything exculpatory in it than I am now. I cannot do that now. So that would — might be a time in the event of conviction that you might have that done, I don't know. I'm not trying to tell you how to run your case. I'm just saying I cannot do that now at this point, and I don't think it is necessary for us to even get into that at this point because of the Brady aspect of this case. All right."
There is a contradiction in the record as to whether the district attorney saw the DHR file on the victim, L.F. At one point, the trial court said that it was the district attorney's opinion that "there is nothing else contained in that Human Resources file that is exculpatory or discoverable underBrady." However, later in the hearing, the trial judge said that L.F.'s DHR records had "not been revealed to either party nor to myself." The question arises as to how the district attorney could be of the opinion that there was nothing else exculpatory or discoverable in the victim's files if the files had not been revealed to him.
If the prosecutor had seen the DHR file on the victim, then the trial court is right in stating that this is a "typical"Brady case in which the defendant can make a general request for exculpatory information, and the State decides which information must be provided to the defendant. In such a case, without a showing that he was aware of exculpatory material contained in those records, Gibson would have no constitutional *Page 236 
right to search the files for something that may be relevant.See Pennsylvania v. Ritchie, 480 U.S. at 59, 107 S.Ct. at 1002. If, however, as the trial court said, neither the parties nor the trial court had seen the file, then, as the United States Supreme Court said in Ritchie, "it is impossible to say whether any information in the [DHR] records may be relevant to [the defendant's] claim of innocence."
While it is clear that the defendant himself may not peruse the files, this court has said that in cases such as this one, where neither the parties nor the trial court has seen the files requested by the defendant, "[A]n appellant is entitled, upon request, to have the trial court conduct an in camera
review of the victim's complete file maintained by DHR in order to determine whether that file contains any exculpatory information." Coats v. State, 615 So.2d 1260, 1261
(Ala.Crim.App. 1992) (emphasis in the original). See also Pennsylvania v.Ritchie, 480 U.S. at 58, 107 S.Ct. at 1001-02.
Obviously, that was not done in this case. The trial judge was adamant in his refusal to examine the victim's DHR files, saying he would not take on the responsibility of determining what was material to the defense's case when he did not even know what that case was. While this court sympathizes with the trial court's concerns, the trial court is offered some relief from carrying the total burden of determining what is material. We note, first, that in Ritchie, United States Supreme Court said that, after the initial examination of the records and determination of what is material to the defendant's case, the trial court is under a continuing duty to disclose. If the defendant knows of specific information he believes to be material, he is free to argue its materiality. Pennsylvania v.Ritchie, 480 U.S. at 60, 107 S.Ct. at 1002-03. Also, "[i]nformation that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release, information material to the fairness of the trial." Pennsylvania v.Ritchie, 480 U.S. at 60, 107 S.Ct. at 1003.
This cause is remanded to the circuit court with instructions for that court to conduct an in camera inspection of the victim's DHR files to determine whether they hold any exculpatory information. A return shall be filed with this court within 60 days of the date of this opinion. The return shall include the trial court's written order stating whether the files contain exculpatory information. We decline to address the other issues raised by the appellant until the trial court makes its determination and the cause is returned to this court.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.