[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 601 
The petitioner, Roy Edward Perkins, filed this petition for a writ of mandamus directing Judge William Scott Donaldson to grant his request for discovery relating to Perkins's postconviction petition attacking his capital-murder conviction and sentence of death.
In 1994 Perkins was convicted of murdering Cathy Gilliam during the course of a kidnapping — an offense defined as capital by §13A-5-40(a)(1), Ala. Code 1975. The jury, by a vote of 10 to 2, recommended that Perkins be sentenced to death. The circuit court followed the jury's recommendation and sentenced Perkins to death. We affirmed his conviction on direct appeal. See Perkinsv. State, 808 So.2d 1041 (Ala.Crim.App. 1999), aff'd,808 So.2d 1143 (Ala. 2001). However, the United States Supreme remanded the case to the Alabama Supreme Court in light of its holding inAtkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242,153 L.Ed.2d 335 (2002), which held that a mentally retarded defendant cannot be sentenced to death. See Perkins v. Alabama, 536 U.S. 953,122 S.Ct. 2653, 153 L.Ed.2d 830 (2002). On remand, the Alabama Supreme Court held that, under the most liberal definition of that term as employed by states that have legislation defining mental retardation, Perkins was not mentally retarded.[1]
See Ex parte Perkins, 851 So.2d 453 (Ala. 2002). The United States Supreme Court denied certiorari review in Perkins v.Alabama, 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 55 (2003). Perkins's direct appeal was final when this Court issued the certificate of judgment on February 20, 2003. See Rule 41, Ala.R.App.P.
On January 29, 2004, Perkins filed a Rule 32, Ala.R.Crim.P., petition for postconviction relief in the Tuscaloosa Circuit Court attacking his conviction and death sentence. On April 18, 2005, the circuit court scheduled an evidentiary hearing for August 10, 2005, and indicated that it would hear evidence on Perkins's claims of ineffective assistance of trial and appellate counsel and juror misconduct.[2] On May 16, 2005, Perkins filed an "Expedited Motion for Discovery." In a one-sentence order the circuit court denied the discovery motion on the same day that it was filed. Perkins then filed this extraordinary petition for a writ of mandamus.
For a writ of mandamus to issue the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the reviewing court. See Ex parteHorton, 711 So.2d 979 (Ala. 1998).
The State initially argues that Perkins has another remedy — an appeal. Therefore, it argues, he cannot satisfy the requirements for the issuance of this extraordinary writ. However, the Supreme Court in Ex parte Land, 775 So.2d 847 *Page 602 
(Ala. 2000), specifically held otherwise. "This Court has held that a petition for the writ of mandamus is the proper means for seeking appellate review of a trial court's discovery order."Land, 775 So.2d at 850. See also Jackson v. State,910 So.2d 797 (Ala.Crim.App. 2005); Ex parte Mack, 894 So.2d 764
(Ala.Crim.App. 2003). Therefore, we will review Perkins's discovery claims in this extraordinary petition.
 I.
Perkins argues in this mandamus petition that the circuit court erred in denying his discovery motion as a whole without allowing him any access to records that are necessary to support the ineffective-assistance-of-counsel claims he asserts in his postconviction petition.
The Alabama Supreme Court in Land held that in order for a petitioner to be entitled to discovery in a postconviction proceeding the petitioner must show "good cause" for the requested evidence. The Supreme Court stated: "[I]n order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief." 775 So.2d at 852.
In Ex parte Mack, we cited several cases that the Supreme Court relied on in Land and stated the following concerning the "good cause" standard:
 "`A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988); People v. Rose, 48 Ill.2d 300, 302, 268 N.E.2d 700
(1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery. . . . Accordingly, the trial court should allow discovery only if the defendant has shown `good cause,' considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. Daley, 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court's denial of a post-conviction discovery request only for an abuse of discretion. Fair, 193 Ill.2d at 265, 250 Ill.Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to a "fishing expedition."'"
894 So.2d at 768 (quoting People v. Johnson, 205 Ill.2d 381,408, 275 Ill.Dec. 820, 836-37, 793 N.E.2d 591, 607-08 (2002)).
In Jackson v. State, 910 So.2d 797 (Ala.Crim.App. 2005), we later stated:
 "The New Jersey Supreme Court in State v. Marshall, 148 N.J. 89, 690 A.2d 1 (1997), a case also cited with approval by the Alabama Supreme Court in Land, stated:
 "`We anticipate that only in the unusual case will a PCR [postconviction relief] court invoke its inherent right to compel discovery. In most cases, a post-conviction petitioner will be fully informed of the documentary source of the errors that he brings to the PCR court's attention. Moreover, we note that PCR "is not a device for investigating possible claims, but a means for vindicating actual claims." People v. Gonzalez, 51 Cal.3d 1179, 275 Cal.Rptr. 729, 776, 800 P.2d 1159, 1206 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). *Page 603 
The filing of a petition for PCR is not a license to obtain unlimited information from the State, but a means through which a defendant may demonstrate to a reviewing court that he was convicted or sentenced in violation of his rights. . . .
 "`Moreover, consistent with our prior discovery jurisprudence, any PCR discovery order should be appropriately narrow and limited. "[T]here is no postconviction right to `fish' through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist." Gonzalez, supra, 275 Cal. Rptr. at 775, 800 P.2d at 1205; see Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.), cert. denied, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994); State v. Thomas, 236 Neb. 553, 462 N.W.2d 862, 867-68 (1990). However where a defendant presents the PCR court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant's case and not privileged, the court has discretionary authority to grant relief. See Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. § 2254 Rule 6(a); [State v.] Lewis, . . . 656 So.2d [1248,] 1250 [(Fla. 1994)]; [People ex rel. Daley v.] Fitzgerald, [123 Ill.2d 175, 183,] 121 Ill.Dec. [937,] 941, 526 N.E.2d [131,] 135 [(1998)] (noting that "good cause" standard guards against potential abuse of PCR discovery process).'
"Marshall, 148 N.J. at 270-71, 690 A.2d at 91-92."
See also State v. O'Brien, 214 Wis.2d 328, 341, 572 N.W.2d 870,877 (Ct.App. 1997).
To determine whether a petitioner has established good cause we must examine the elements of the claim for which the discovery is requested. See Land, supra. Here, all of the discovery related to Perkins's claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel the petitioner must satisfy the test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show (1) that counsel's performance was deficient and (2) that he was prejudiced by the deficient performance. Perkins argued that counsel was ineffective for failing to investigate and to present any mitigating evidence at the penalty phase and that appellate counsel was also ineffective for failing to raise this issue on appeal.[3] In order to prevail on this claim, Perkins was required to show that mitigating evidence did in fact exist but was not presented.
Perkins's 64-page discovery motion was very detailed. In the motion Perkins requested production of his records that were maintained by
 "the Alabama Department of Corrections ("DOC"), the Vacca Campus of the Alabama Department of Youth Services (formerly the Alabama Boys' Industrial School), Draper Correctional Facility, Kilby Correctional Facility, William Donaldson Correctional Facility, (Formerly *Page 604 
West Jefferson), Holman Correctional Facility, and any/or psychiatric services or contractors for medical and/or psychiatric services to the Alabama Department of Corrections, including, but not limited to Correctional Medical Services."
Perkins also requested production of his records from the following agencies and courts: the Alabama Department of Youth Services ("DYS"), the Alabama Department of Human Resources ("DHR"), the Alabama Department of Mental Health and Mental Retardation, Taylor Hardin Secure Medical Facility, Bryce Medical Facility, the police departments of Tuscaloosa and Fayette Counties, the sheriff departments of Tuscaloosa and Fayette Counties, Berry Police Department, and the juvenile court files from Fayette and Tuscaloosa Counties.[4]
Perkins contended in his discovery motion that he had been incarcerated, had had contact with, or had been evaluated by, each of the named facilities or agencies and that he needed the records to substantiate his claim that counsel failed to investigate and present any mitigation evidence at the penalty phase. He contended that the records would show that Perkins had a history of mental illness related to brain dysfunction and cognitive deficits, that he adapted well to a structured environment while incarcerated, that he was not violent, that he is epileptic and suffers from occasional seizures, that counsel did not meet with him before trial, and that he was raised in an horrific home environment with little money and no supervision.[5]
In Land, the petitioner requested almost the identical information to support his claim of ineffective assistance of counsel for failing to investigate and present mitigating evidence at his capital trial. In issuing the writ of mandamus the Alabama Supreme Court stated:
 "Land presented the trial court with claims of ineffective assistance of counsel that are facially meritorious. In fact, these claims suggest several potential serious deficiencies in the performance of his trial counsel that, if proved, may entitle him to relief. Furthermore, we agree with Land that it would be practically impossible for him to show that he suffered prejudice from the deficient performance of his counsel unless he could show the trial court that mitigating evidence (which he has a reasonable basis to believe in fact exists) existed at the time of his trial and then argue, on the basis of that evidence, that a `reasonable probability' exists that a jury hearing the evidence would have recommended life imprisonment without parole. Cf. Jackson v. Herring, supra, 42 F.3d [1350] at 1364, 1369 [(11th Cir. 1995)](federal habeas evidentiary hearing `unearthed a great wealth of [mitigating evidence]' from which the defendant was able to show `that a reasonable probability exists that a jury hearing this evidence would have recommended life'). Therefore, we conclude that Land demonstrated to the trial court that he was entitled to the requested discovery (listed above), which is relevant to his claim that his trial counsel was ineffective at the penalty phase of his trial."
775 So.2d at 855. Based on the Supreme Court's holding in Land, Perkins is entitled *Page 605 
to discovery from the above-referenced agencies and courts as those files relate to the petitioner — Roy Perkins.
 II.
Perkins also requested production of any and all DYS and DHR records related to Dovie Mae Perkins, his mother; Pat Traweek, his stepfather; and Kathy Hocutt, his sister.
The Alabama Supreme Court in Land did not address discovery as it relates to confidential files on individuals other than the petitioner. However, this Court has noted that Alabama law protects the confidentiality of DYS and DHR records. See §§ 12-15-100 and 12-15-101, and § 38-2-1, Ala. Code 1975. Because these records are confidential, the most a party is entitled to, upon a showing of good cause, is an in camera inspection of the documents by a circuit court. See Gibson v. State,677 So.2d 233 (Ala.Crim.App. 1994). A party is not entitled to unfettered access to records that are not related to him and that are maintained by state agencies specifically charged with guarding the confidentiality of those records.[6] See Jackson, supra.
For these reasons, we cannot say that Perkins has a clear legal right to complete access to these records; therefore, he has failed to establish the requirements for the issuance of a writ of mandamus as it relates to this claim.
 III.
Perkins argues that the circuit court erred in denying his request for production of his records maintained by the Alabama Board of Pardons and Paroles ("the Board"). The Alabama Supreme Court in Ex parte Alabama Board of Pardons Paroles,814 So.2d 870 (Ala. 2001), held that according to § 15-22-36(b), Ala. Code 1975, records maintained by the Board are confidential and are not subject to inspection. As the Supreme Court, construing §15-22-36(b), stated:
 "Principles of statutory construction bind this Court to interpret plain language of a statute `to mean exactly what it says' and to engage in judicial construction only if the language in the statute is ambiguous. Ex parte Alabama Great Southern R.R., 788 So.2d 886, 889 (Ala. 2000), quoting Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998). The Legislature stated in § 15-22-36(b), Ala. Code 1975, with specificity and particularity, that `all other portions of the file shall be privileged.' A plain reading of the statute indicates that the Legislature created an absolute privilege to provide individuals and entities an unfettered opportunity to provide information to the Board, without exposing the individuals and entities to public scrutiny and potential retaliation. To hold otherwise, this Court would have to engage in improper judicial construction.
". . . .
 "Section 15-22-36(b), Ala. Code 1975, clearly and unambiguously establishes an absolute privilege that the Board is legally bound to obey and the circuit court is under a duty to uphold."
814 So.2d at 872-73. Therefore, Perkins cannot satisfy the requirements for the issuance of a writ of mandamus as to this claim. *Page 606 
 IV.
Perkins also argues that the circuit court erred in denying his request for discovery of records maintained by various police and sheriff departments related to Pat Traweek, Perkins's stepfather; Dovie Mae Perkins, Perkins's mother; Raymond Watkins; Annie Watkins; Richard Watkins; Jerry Traweek, Perkins's half-brother; and Faye Edgeworth.[7] He asserts that the criminal records of these individuals are relevant to his claim of ineffective assistance of counsel.
Convictions are matters of public record. A petitioner fails to show good cause for discovery when requested evidence is available through counsel's own efforts. See Mack v. State,894 So.2d 764 (Ala.Crim.App. 2003) (upheld circuit court's failure to grant discovery of criminal records in postconviction proceeding, noting that convictions are matters of public record).
 V.
Perkins also argues that he is entitled to production of records maintained by the United States Department of Health and Human Services and the Social Security Administration as they relate to him, his mother, and his sister. Specifically, he contends that during Perkins's childhood his mother was receiving Social Security benefits and supplemental security income ("SSI") and his mother cannot remember the exact amount that she received from the government. He contends that the amount was relevant to show that Perkins grew up in poverty.
Certainly, it was not necessary to show the exact amount that Perkins's mother received from the government every month in order to show that Perkins was raised in a poverty-stricken household. This information was available from other sources, without resort to subpoenaing the federal government files. As Perkins states in his mandamus petition, the one record he was able to obtain from DYS shows that at the time DYS was involved Perkins was living in a "shack" in Berry, Alabama. When evidence is available through less intrusive means, a petitioner fails to establish good cause for requested discovery. See Jackson, supra. Therefore, we cannot say that Perkins has a clear legal right to relief on this claim.
 VI.
Perkins argues that the circuit court abused its discretion in denying him access to records in the State's possession. Perkins contends that he is entitled to the production of various items that are in the State's possession including: all reports and test results pertaining to State's Exhibit 51 and 52 — two halves of a bloody shirt the victim was wearing; Perkins's fingerprints and latent prints lifted in the case and all test results pertaining to the fingerprints; all "tests performed or relied on by Dr. [Kenneth] Warner in this case, the results of those tests, the methodologies used, and any and all reports and analyses made or relied on by Dr. Warner";[8] photographs of the victim before her death; custody logs for exhibits that were introduced at trial; and tests conducted on the semen recovered from the rape kit.
Essentially, Perkins requests access to the State's file on this case. Perkins is entitled to this information. See Ex parteMonk, 557 So.2d 832 (Ala. 1989); Hooks v. State, 822 So.2d 476
(Ala.Crim.App. 2000). However, Perkins is not entitled to the *Page 607 
State's work-product because work-product materials contained in the district attorney's file are privileged and thus not discoverable. Monk.
As part of this claim Perkins requests access to notes made by the district attorney made during voir dire examination. The State asserts that these notes are work-product and are privileged. It cites this Court's opinion in Rogers v. State,417 So.2d 241 (Ala.Crim.App. 1982), to support its assertion.
In Rogers, this Court held that the original notes made by a detective while investigating a case were work-product and were privileged. However, Alabama has never specifically addressed whether a prosecutor's notes made during voir dire examination are likewise privileged. Our neighboring states of Florida, Georgia, and Mississippi have addressed this issue and have held that a prosecutor's personal notes compiled during voir dire examination are work-product and are not discoverable by the defense. See Patton v. State, 784 So.2d 380 (Fla. 2000);Thorson v. State, 721 So.2d 590 (Miss. 1998); Foster v.State, 258 Ga. 736, 374 S.E.2d 188 (1988). See also State v.Carter, 641 S.W.2d 54 (Mo. 1982). We join those jurisdictions that hold that a prosecutor's notes compiled during jury selection are privileged and are not subject to discovery.
For the foregoing reasons, this petition is due to be granted in part and denied in part. Judge Donaldson is directed to comply with our instructions and grant Perkins discovery as discussed in Parts I and VI of this opinion. All other relief requested in this petition is denied.
PETITION GRANTED IN PART; DENIED IN PART; WRIT ISSUED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ., concur.
[1] Alabama has yet to adopt legislation addressing theAtkins decision.
[2] Perkins raises no issues in this mandamus petition related to the juror misconduct claim.
[3] We note that when Perkins was tried the Ex parte Jackson,598 So.2d 895 (Ala. 1992), overruled by Ex parte Ingram,675 So.2d 863 (Ala. 1996), procedure was in place which allowed for appellate counsel to raise claims of ineffective assistance of trial counsel in a motion for a new trial. Therefore, we question whether the claims that relate to ineffective assistance of trial counsel are properly before the circuit court. See Clemons v.State, [Ms. CR-01-1355, June 24, 2005] ___ So.2d ___ (Ala.Crim.App. 2005); Brooks v. State, [Ms. CR-01-0607, April 29, 2005] ___ So.2d ___ (Ala.Crim.App. 2005).
[4] Perkins's motion requested discovery from other agencies; however, he does not pursue all of the requested discovery in this mandamus petition.
[5] This type of evidence has been viewed as mitigating evidence. See Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527,156 L.Ed.2d 471 (2003); Skipper v. South Carolina, 476 U.S. 1,106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).
[6] This is in keeping with law that holds that a defendant in a death-penalty case is entitled to an "individualized sentencing determination." See Hall v. State, 820 So.2d 113, 149
(Ala.Crim.App. 1999).
[7] Some of these individuals were not identified in Perkins's mandamus petition.
[8] Dr. Warner performed the autopsy on the victim. *Page 608