[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 329 
The State of Alabama filed this petition for a writ of mandamus directing Judge James H. Reid, Jr., to vacate his discovery order related to Calvin Stallworth's petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P., in which he attacks his capital-murder conviction and death sentence.
In 1998, Stallworth was convicted of two counts of capital murder and was sentenced to death. On direct appeal, we affirmed Stallworth's convictions and remanded the case for the circuit court to correct its sentencing order. See Stallworth v.State, 868 So.2d 1128 (Ala.Crim.App. 2001). On return to second remand, we affirmed Stallworth's death sentence. The Alabama Supreme Court denied certiorari review. Ex parteStallworth, 868 So.2d 1189 (Ala. 2003), cert. denied,540 U.S. 1057, 124 S.Ct. 828, 157 L.Ed.2d 711 (2003). This Court issued the certificate of judgment on June 27, 2003.
In June 2004, Stallworth filed a Rule 32 petition in the Baldwin Circuit Court attacking his capital-murder convictions and death sentence. In May 2005, Stallworth filed a lengthy discovery motion. In June *Page 330 
2005, Judge James H. Reid, Jr., held a hearing and delayed ruling on the motion. Stallworth then filed an amended Rule 32 petition and a motion to renew the discovery motion that had been filed in May 2005. On January 12, 2006, Judge Reid granted Stallworth all of the discovery that he had requested in his May 2005 discovery motion. The State then filed this mandamus petition and a request that we stay all action pending the disposition of this extraordinary petition. By order dated January 20, 2006, we stayed all action in the circuit court and allowed the respondents 21 days to answer the allegations contained in this mandamus petition. Stallworth filed a response. Additionally, amici curiae briefs were filed by the Baldwin County District Attorney and the Alabama Board of Pardons and Paroles.
Initially, we note that this case is correctly before this Court by way of a petition for a writ of mandamus. See Exparte Land, 775 So.2d 847 (Ala. 2000); Hooks v.State, 822 So.2d 476, 478 (Ala.Crim.App. 2000) (Alabama appellate courts have used mandamus to review a circuit court's ruling on a discovery motion). Moreover, this petition was filed within the presumptively reasonable time period set out in Rule 21(a), Ala.R.App.P. The Alabama Supreme Court in Ex parteThomas, 828 So.2d 952 (Ala. 2001), held that the State must file a mandamus petition within seven days of the date of the ruling that is the subject of the petition. The State filed this petition within that period.
The State asserts that Judge Reid erred in granting what it says is a broad discovery motion without first determining whether good cause existed for disclosing the requested information. Specifically, it argues that Judge Reid failed to consider the claims for which the discovery was requested.
Judge Reid's discovery order states, in part:
 "This cause having come before this Court upon [Stallworth's] renewed motion for discovery of prosecution files, evidence, institutional records, and information necessary to a fair Rule 32 evidentiary hearing, and the Court being of the opinion that said motion is due to be granted, it is therefore
 "Ordered that the State disclose to [Stallworth's] counsel to inspect, copy, test, analyze, and photograph all materials identified in petitioner's specific requests for discovery within 30 days from the signing of this order. [Stallworth] shall be granted a reasonable period of time to review, investigate, analyze, test, and otherwise examine said discovery, and is granted leave to amend the Rule 32 petition within a reasonable time period thereafter."
In Land, the Alabama Supreme Court adopted a standard of good cause for discovery in postconviction proceedings initiated under Rule 32, Ala.R.Crim.P.[1] It chose not to adopt the broader discovery rules for civil cases contained in the Alabama Rules of Civil Procedure. As this Court stated in Ex parte Perkins, 920 So.2d 599
(Ala.Crim.App. 2005):
 "The Alabama Supreme Court in Land held that in order for a petitioner to be entitled to discovery in a postconviction *Page 331 
proceeding the petitioner must show `good cause' for the requested evidence. The Supreme Court stated: `[I]n order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief.' 775 So.2d at 852.
 "In Ex parte Mack, [894 So.2d 764
(Ala.Crim.App. 2003),] we cited several cases that the Supreme Court relied on in Land and stated the following concerning the `good cause' standard:
 "`"A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131
(1988); People v. Rose, 48 Ill.2d 300, 302, 268 N.E.2d 700 (1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery. . . . Accordingly, the trial court should allow discovery only if the defendant has shown "good cause," considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. Daley, 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court's denial of a post-conviction discovery request only for an abuse of discretion. Fair, 193 Ill.2d at 265, 250 Ill. Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to a `fishing expedition.'"'"
 894 So.2d at 768 (quoting People v. Johnson, 205 Ill.2d 381, 408, 275 Ill.Dec. 820, 836-37, 793 N.E.2d 591, 607-08 (2002))."
920 So.2d at 602-03. The Alabama Supreme Court in Land
noted that the main emphasis in determining whether good cause is shown is a determination of the merits and the procedural posture of the underlying claims for which the discovery is sought to substantiate. The Alabama Supreme Court inLand stated:
 "[W]e must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land's basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause."
775 So.2d at 853. In Hooks, we stated:
 "[A] claim that is procedurally barred . . . in a postconviction petition clearly is not one that entitles a petitioner to relief. If a postconviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery of materials related to that claim. See Land."
822 So.2d at 481.
 I.
The State initially asserts that it does not contest Stallworth's request for access to the prosecutor's case file related to the homicides. In Ex parte Perkins, supra, we stated that a Rule 32 petitioner was entitled to inspect the prosecutor's file. However, we also noted that there is no right to inspect the State's work product. *Page 332 
In footnote 5 of its mandamus petition, the State contends: "[T]he undersigned counsel and Stallworth's attorneys have discussed . . . a mutually agreeable procedure for turning over a copy of the prosecutor's file." (State's petition at page 12, n. 5.) It thus appears that both parties have reached an agreement on this requested discovery.
 II.
The State contends that Stallworth failed to show good cause for disclosure of "information relating to food, water, medicine, or any other materials ingested or not ingested by Stallworth and given to him during his interrogation."
In the discovery motion Stallworth alleged that this information was relevant to his claim that his statements were coerced. Specifically, Stallworth stated:
 "Stallworth alleges that employees of the Foley Police Department, employees of the Baldwin County Sheriff's Office at Robertsdale, Alabama, and perhaps other Alabama or federal law enforcement offices coerced his confession in violation of his constitutional rights. Stallworth alleges that he was not given a timely Miranda warning before he was interrogated on the major facts relating to these crimes. Stallworth also alleges that he requested the assistance of an attorney and despite his request, those state and/or federal employees and representatives interrogating him refused to provide him with an attorney or other meaningful legal assistance and refused to cease questioning him after he requested an attorney. Stallworth's interrogation lasted over a number of days, during which he was not given adequate food or water, which seriously impaired his ability to respond to this interrogation, especially in view of his physical infirmities, including diabetes and other physical problems. In addition, Stallworth did not have the mental capacity to resist this kind of physical pressure in the absence of the assistance of an experienced attorney. As a result of Stallworth's improper interrogation, which included threats and other mental and physical compulsion, Stallworth involuntarily provided an incriminating statement or statements which were false."
Stallworth's amended petition does not raise a claim that Stallworth's statements were coerced.[2] Accordingly, Stallworth cannot show good cause for the disclosure of information related to this claim. There can be no showing of good cause when the requested discovery does not relate to any claim raised in a postconviction petition. See Land, supra.
Moreover, the State contends that this claim is procedurally barred in a postconviction proceeding and that a procedurally barred claim does not entitle a petitioner to relief; therefore, there can be no showing of good cause. We agree. SeeHooks, supra.
 III.
The State further asserts that the circuit court erred in allowing the following discovery:
 "All documents or information relating to the mental health of Stallworth, including, but not limited to: *Page 333 
 "(a) All documents relating to any testing, examinations, evaluations or interviews of Stallworth, including but not limited to, psychiatric, psychological, neuro-psychological, neurological or medical documents;
 "(b) All records generated or maintained by the Alabama Department of Mental Health and Mental Retardation relating to Stallworth;
 "(c) All medical, psychological, psychiatric, educational or mental health facility records of any kind, as well as any records generated or maintained by any physician, psychologist, psychiatrist, educator, medical or mental health provider of any kind relating to Stallworth;
 "(d) All records pertaining to Stallworth generated or maintained by the Alabama Department of Human Resources, including any subagency or department that operates within or in conjunction with the Alabama Department of Human Resources; and
 "(e) All records of any proceeding from the juvenile docket of the respective courts involving Stallworth.
 "All documents or information relating to the incarceration of Stallworth, including, but not limited to:
 "(a) All records relating to Stallworth generated or maintained by the Alabama Department of Corrections, including, but not limited to, disciplinary records, medical records, psychological, psychiatric, and mental health records, and any other records generated or maintained by any prison, medical facility or any other entity associated with the Alabama Department of Corrections, including, but not limited to, Baldwin County Jail and Holman State Prison;
 "(b) All documents generated or maintained by the Alabama Board of Pardons and Paroles relating to Stallworth;
 "(c) All juvenile detention, jail, prison, parole, probation, and pre-sentence investigation documents;
 "(d) All records of detention or court authority; and
 "(e) All institutional documents of any kind, including, but not limited to, documents prepared by State facilities, institutions, agencies, or educational entities, or any facilities, institutions, agencies, or educational entities of the State of Alabama in the possession, custody, or control of the State, regardless of who originally made or kept them."
(Emphasis added.) The circuit court ordered discovery from the Department of Mental Health and Mental Retardation ("DMHMR"); the Department of Human Resources ("DHR"); the Alabama Department of Corrections ("DOC"); the Alabama Board of Pardons and Paroles ("the Board"); all Alabama juvenile courts and detention centers, and various other agencies.
The State asserts that Stallworth failed to establish good cause for the disclosure of this information because in the discovery motion Stallworth asserted that this information was relevant to support his claim made pursuant to Atkins v.Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335
(2002) — a claim that Stallworth did not pursue in his amended Rule 32 petition.
However, Stallworth asserts, and we agree, that these documents were relevant to his ineffective-assistance-of-counsel claims. See Land, supra, and Perkins, supra.
The Board has filed an amicus curiae brief in this case. It asserts that according to the Alabama Supreme Court and this Court, the Board's files are confidential *Page 334 
and not subject to inspection. It cites the Alabama Supreme Court's opinion in Ex parte Alabama Board of Pardons Paroles, 814 So.2d 870 (Ala. 2001), and this Court's opinion in Jackson v. State, 910 So.2d 797 (Ala.Crim.App. 2005), to support its assertion. (See subsection (b) in Stallworth's discovery motion emphasized above.)
In Ex parte Alabama Board of Pardons Paroles, the Alabama Supreme Court stated: "Section 15-22-36(b), Ala. Code 1975, clearly and unambiguously establishes an absolute privilege that the Board is legally bound to obey and the circuit court is under a duty to uphold." 814 So.2d at 873. In Jackson, this Court stated: "[T]he circuit court's order, which allows access to the Board's files, directs the Board to violate § 15-22-36(b), Ala. Code 1975. The records maintained by the Board are not subject to inspection."910 So.2d at 809. Clearly, based on established precedent the circuit court's order directing the Board to turn over its records directed the Board to violate § 15-22-36(b), Ala. Code 1975.
 IV.
The State further asserts that the circuit court erred in granting the following discovery:
 "All documents and information relating to the alleged crimes and crime scenes, including, but not limited to:
 "(a) All telephone records for December 4, 1997, for the Dukes Parkway Shell [gasoline-service station] and any mobile phone records belonging to or in the possession of Mrs. Dukes;
 "(b) All telephone records for December 14, 1997, the telephone records of the Diamond Station and any mobile phone belonging to or in the possession of Mrs. Morton;
 ". . . .
 "(i) The names and addresses of all persons with knowledge of any fact or circumstance relating to the alleged crimes; and
 "All documents and information disclosing bias, prejudice or prejudgment by the citizens of Baldwin County, Alabama v. Stallworth, including, but not limited to, letters, records of telephone calls, memoranda, and any other records and including documents reflecting the identity of persons expressing such views."
(Emphasis added.)
The State asserts that Stallworth cannot show good cause for the disclosure of this information because Stallworth asserted that this evidence was relevant to his Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963), claim, his juror-misconduct claim, and his claim that he was innocent and that in the amended petition Stallworth does not pursue his claim of innocence. Also, the State argues, Stallworth failed to allege in his Brady claim and his juror-misconduct claim any facts that would satisfy the requirements of Ex parte Pierce, 851 So.2d 606
(Ala. 2000), or Ex parte Dobyne, 805 So.2d 763
(Ala. 2001), because he failed to allege that these claims could not have been raised at trial or on direct appeal. See Boydv. State, 913 So.2d 1113 (Ala.Crim.App. 2003). We agree with the State; there can be no showing of good cause when the requested documents relate to a claim not raised in a postconviction petition or a claim raised in a postconviction petition that is procedurally barred. See Land, supra, and Hooks, supra.
In regard to the last emphasized portion of Stallworth's discovery motion quoted above, Stallworth requested "all *Page 335 
documents and information disclosing bias, prejudice or prejudgment by the citizens of Baldwin County, Alabama versus Stallworth." We are at a loss as to how this request could possibly be complied with. Clearly, this discovery request could only be characterized as a "fishing expedition."
 V.
The State further argues that the following discovery, related to the 47 State witnesses who testified at Stallworth's trial, should not have been allowed:
 "All documents relating to any prosecution witness, that is or may be favorable to Stallworth on the issue of guilt or mitigation regarding any element of the offense of capital murder, or felony murder, in the alleged crime, including but not limited to:
 "(a) All documents and information provided by prosecution witnesses including, but not limited to, any communications or statements (whether written or oral) from any source, memoranda, summaries or recordings of such communications or statements, and grand jury testimony;
 "(b) All documents and information that may have impeached or otherwise contradicted the testimony of any prosecution witnesses;
 "(c) As of the time of Stallworth's trial, and as of the present, the curriculum vitae of any expert who testified at Stallworth's trial, including, but not limited, to Dr. Julia Gooden, Richard Dale Carter and Dr. James C.U. Downs;[3]
 "(d) All juvenile detention, jail, prison, parole, probation, and presentence investigation recordings regarding any Prosecution Witnesses;
 "(e) All arrest, conviction, and adult and juvenile criminal arrest and prosecution records regarding any Prosecution Witness;
 "(f) All records of any law enforcement authority, including any documents relating to any plea negotiations between any Prosecution Witness and the State;
 "(g) All documents and information relating to or any reward offered relating to the deaths of the Victims;
 "(h) All documents relating to communications between the Baldwin County District Attorney, the Office of Alabama's Governor, the State and any Prosecution Witness or other individual regarding the availability, promise or payment of a reward;
 "(i) All documents relating to the availability, promise or payment of any reward;
 "(j) All records of any detention or court authority relating to any Prosecution Witness;
 "(k) All records of any prosecuting authority relating to any Prosecution Witness;
 "(l) All psychiatric, psychological, educational, and mental health records of any Prosecution Witness; and
 "(m) All documents relating to any lie detector, or polygraph, test taken by any Prosecution Witness, including the results, whether or not conclusive."
In essence Stallworth requested all juvenile, criminal, and mental-health records *Page 336 
related to the 47 State witnesses. In condemning such broad and unfettered discovery, this Court in Jackson
stated:
 "The State also argues that Judge McCooey erred in allowing discovery of all criminal, mental-health, and correctional records for all witnesses who testified for the State at Jackson's trial.
 ". . . .
 "Jackson contends that these documents related to his Brady claim — a claim Judge McCooey had previously found was procedurally barred. When requested documents relate to a claim that is procedurally barred there can be no showing of good cause for the disclosure of the requested information. See Hooks.
 "Moreover, a defendant is not entitled to discover the criminal records of a State witness. As this Court stated in Hardy v. State, 804 So.2d 247
(Ala.Crim.App. 1999):
 "`As a general rule, the government need not disclose evidence available to the defense from other sources or evidence that the prosecution could not reasonably be imputed to have knowledge of or control over. Mills v. Singletary, 63 F.3d 999 (11th Cir.1995), cert. denied, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); United States v. Moore, 25 F.3d 563 (7th Cir.), cert. denied, 513 U.S. 939, 115 S.Ct. 341, 130 L.Ed.2d 297 (1994).
 "`We have held in Alabama in a number of cases that a defendant is not entitled to the general disclosure of the criminal records of the state's witnesses. See, e.g., Davis v. State, 554 So.2d 1094
(Ala.Crim.App. 1984), aff'd, 554 So.2d 1111 (Ala. 1989), cert. denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991); Wright v. State, 424 So.2d 684 (Ala.Crim.App. 1982) (no absolute right of disclosure of criminal records of state's witnesses); Mardis v. State, 423 So.2d 331
(Ala.Crim.App. 1982); Mack v. State, 375 So.2d 476 (Ala.Crim.App. 1978), aff'd, 375 So.2d 504
(Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980). We have also held that the trial court's refusal to order the prosecution, pursuant to a defendant's discovery motion, to provide the criminal record of each expected witness for the state was not a violation of Brady and its progeny. Davis v. State, 554 So.2d at 1100.'
 "804 So.2d at 286.
 "Also, Jackson requested and was granted unlimited access to the confidential mental-health records of all 20 witnesses for the State. Allowing unfettered access to this information was contrary to the decisions of the Alabama Supreme Court in Ex parte Western Mental Health Center, 884 So.2d 835
(Ala. 2003), and Ex parte Rudder, 507 So.2d 411 (Ala. 1987). . . .
 "Last, the circuit court's ruling erroneously granted Jackson unlimited access to juvenile records related to all 20 witnesses for the State. Discovery of information regarding juveniles is severely limited by § 12-15-100, Ala. Code 1975. A defendant is not entitled to unfettered access of privileged documents. In Schaefer v. State, 676 So.2d 947
(Ala.Crim.App. 1995), this Court held that the defendant was entitled to have the trial court examine in camera privileged records, i.e., the child victim's psychiatric records and records relating to the child kept by DHR, so that the court could determine whether the privilege yielded to the defendant's rights of confrontation and cross-examination. See also D.P. v. State, 850 So.2d 370 (Ala.Crim.App. 2002). Here, the trial court *Page 337 
conducted no in camera examination of the privileged documents."
910 So.2d at 804-07 (footnote omitted). While we realize that Stallworth may be entitled to some of the requested information, Stallworth is not entitled to the broad and unfettered discovery granted in regard to this discovery request. SeeJackson, supra.
 VI.
The State further argues that Stallworth failed to show good cause for disclosure of the following documents:
 "All documents or information relating to any involvement, or suspected involvement, of any individual other than Stallworth in the alleged crimes, including, but not limited to Gregory Rolling, Danny Eugene May, Ralph McMillian, Eric Busey, Walter Reed, Alfred James, Terrell James, Sherman Packer, Marvin C. Dupree, Mack Arthur Adams, Charles Gregory Clark, Alex Stallworth, or any other suspects, including but not limited to:
 "(a) All documents and information provided by, or relating to, any of the aforementioned individuals, or any other suspects;
 "(b) The Baldwin County District Attorney's entire case files relating to any of the aforementioned individuals, or any other suspects;
 "(c) All records of any proceeding relating to any of the aforementioned individuals, or any other suspects;
 "(d) All documents and information regarding the existence and outcome of any plea or other negotiations between (a) the State and (b) any other aforementioned individuals, or any other suspects;
 "(f) All arrest, conviction, and criminal offense records, regardless of location of the events underlying such records, regarding any of the aforementioned individuals, or any other suspects;
 "(g) All records relating to inmate placement at the Baldwin County Jail, including but not limited to, records relating to cell assignments for Stallworth, any of the aforementioned individuals, or any other suspects."
Initially, we observe that Stallworth never identified any of the individuals named in the discovery motion. Also, Stallworth alleged in the discovery motion that this information related to his Brady claim. As previously stated, Stallworth'sBrady claim is procedurally barred because in the amended Rule 32 petition he failed to allege why that claim had not been raised at trial or on direct appeal. SeeBoyd, supra.
 VII.
The State also asserts that discovery was erroneously granted on the following documents:
 "All documents or information relating to robberies or murders in, or around, Foley, Alabama, and Mobile, Alabama, from 1995 to present, including, but not limited to, all documents relating to any suspected correlation with the Alleged Crimes; and
 "(a) All documents or information relating to the robbery/murder of William Fuller `Manzy' Ewing at a gasoline/convenience store located on Fort Morgan Road, Baldwin County, Alabama, on or about February 14, 1998 including, but not limited to, all documents relating to any suspected correlation between that incident and the Alleged Crimes, and
 "i. All latent fingerprints; fingerprint cards and documents related thereto; *Page 338 
 "ii. All documents written by, submitted to, or requested by Alabama Department of Forensic Science employees;
 "iii. All blood samples and documents relating to blood typing or DNA testing;
 "iv. All Alabama Department of Forensic Sciences receipts; and
 "v. All physical evidence."
Stallworth requested and was granted access to every case file related to a murder or a robbery that occurred in the Foley or Mobile area since 1995. The consequences of granting such broad discovery are considerable in terms of the district attorney's personnel and financial resources. Indeed, we are aware of no other case involving such a far-reaching discovery request.
The Baldwin County District Attorney has filed an amicus curiae brief in which it argues that the circuit court failed to consider the district attorney's inability to comply with such broad discovery requests within the allotted 30 days. It cites this Court's opinion in Jackson, in which we specifically stated that a circuit court must consider the following when determining whether to order discovery in a collateral proceedings: (1) the issues raised in the collateral petition; (2) the scope of the requested discovery; (3) the length of time between the conviction and the collateral proceeding; (4) the burden of discovery on the State and on any witnesses; and (5) the availability of the evidence through other sources. Jackson, 910 So.2d at 802, quotingLand-People v. Johnson, 205 Ill.2d 381, 408, 275 Ill.Dec. 820, 836-37, 793 N.Ed.2d 591, 607-08.
We agree with the Baldwin County District Attorney that there is no indication that the circuit court considered the time, manpower, and expense that the State was required to exert to comply with the enormous discovery order in this case.
Moreover, Stallworth asserted in his discovery motion that this information was relevant to his Brady claim. As we have previously stated, a Brady claim is barred if it fails to assert why the claim was not raised at trial or on direct appeal.
 VIII.
The State further asserts that Stallworth failed to show good cause for disclosing the following physical evidence:
 "All documents and information regarding evidence of the alleged crimes, including, but not limited to:
 "(a) All forensic materials and physical evidence relating to the alleged crimes, including, but not limited to, items handled by agents of the Baldwin County (Alabama) Sheriff's Office, the Foley Police Department, the Baldwin County Coroner's Office, and the Alabama Bureau of Investigation and the following items:
 "(i) Purses, television sets, telephones, safes, cash registers, papers, space heaters and jewelry;
 "(ii) oral, anal and vaginal swabs;
 "(iii) hair, fingernail clippings and trace fibers;
 "(iv) knives;
 "(vi) clothing, including but not limited to, [Stallworth's] hooded jacket, and the victims' clothing
 "(vii) bloody towels and rags;
 "(viii) Other blood or bodily fluid samples or residue; and
 "(ix) DNA samples, such as two patches cut from the inside sleeve of [Stallworth's] dark hooded jacket.
 "(b) All documents and information provided by or submitted to the Baldwin County Coroner's office, including, but not limited to, any reports by Huey Mack relating to the victims and *Page 339 
the victims' death certificates, respectively;
 "(c) All documents or information relating to all criminalistic, laboratory, forensic or scientific examination, investigation or analysis of any object, sample, exhibit, material, or fluid in relation to the alleged crimes, including, but not limited to, fingerprint and DNA examinations.
 "(d) All Documents or information relating to any condition of either victim from the time their bodies were found to the conclusion of their autopsies;
 "(e) All documents or information on the chain of custody and conditions, or changes therein, of any exhibit used at trial, from the time it was taken into custody by the State until the time of Stallworth's trial;
 "(f) All documents relating to the Victims' injuries, including, but not limited to, documents relating to the autopsies performed and diagrams related thereto;
 "(g) All documents relating to time of death determinations;
 "(h) All blood samples and documents relating to blood typing or DNA testing;
 "(i) All documents relating to tests of any kind conducted on Stallworth, including, but not limited to, documents relating to all tests conducted on samples of Stallworth's hair, blood, saliva or any other corporeal sample;
 "(j) All documents relating to any analysis, comparison or evaluation of any suspects' fingerprints, hair, blood or other corporeal samples in relation to the alleged crimes;
 "(k) All documents relating to or constituting fingerprints including, but not limited to, all latent fingerprints, fingerprint evaluations and comparisons;
 "(l) All documents relating to any medical, pathological, toxicological, biochemical, criminalistic, laboratory, forensic or scientific examination, investigation, or analysis relating to the deaths of the victims, including, but not limited to, vitreous fluid readings, nail clippings, fingernail scrapings, DNA samples, including those patches taken from the inside sleeve of [Stallworth's] jacket, hair fibers, swabs, and any other forensic evidence tested and/or analyzed; and
 "(m) All documents relating to time of death determinations in the alleged crimes, including, but not limited to, time of death calculations and charts relating thereto."[4]
Stallworth asserted in his discovery motion that this information was relevant to his claims of ineffective assistance of counsel because, he argued: "To determine whether his trial counsel was ineffective, Stallworth must examine all of the physical and DNA evidence that was available during his trial." He further asserted in his discovery motion:
 "Stallworth may further argue that his trial counsel were ineffective in that they failed to retain a blood splatter expert to examine Stallworth's dark hooded jacket, as well as the small residue of blood inside the sleeve of the same jacket; crime scene photographs and other related evidence. Stallworth's trial counsel even failed to argue whether the blood splatter evidence set forth *Page 340 
during trial was consistent with the evidence allegedly linking Stallworth to these murders."
Based on Stallworth's own statements this information was not relevant to any claim that was raised but was requested so that counsel could investigate into possible new claims. This information was sought so that counsel could go on a fishing expedition. As the Alabama Supreme Court warned in Land:
 "[W]e caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' . . . Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief."
775 So.2d at 852. Such discovery is not sanctioned by the Alabama Supreme Court in postconviction proceedings.
As the Illinois Supreme Court stated when reviewing a similar discovery request:
 "During the post-conviction proceedings below, defendant requested that he be permitted discovery in order to analyze the following items: fingerprint evidence collected by the State from the Adams crime scene; the blood-like substance found in his truck; and the four $100 bills found in his truck. Defendant asserts that, if permitted discovery of these items, he may be able to place other possible suspects at the Adams crime scene, show that the blood-like substance in his truck did not belong to the victim, Adams, and, finally, show that the four $100 bills were proceeds from his bank loan. The circuit court denied all these requests. Defendant alleges reversible error in the circuit court's denial.
 "The circuit court has inherent discretionary authority to order discovery in post-conviction proceedings. People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). Circuit courts should exercise this inherent authority with caution, however, because post-conviction proceedings afford only limited review and `because there would exist in those proceedings a potential for abuse of the discovery process.' Daley, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d 131.
 "The circuit court correctly denied the discovery requests. The requests amount to a fishing expedition in an attempt to create some doubt of defendant's guilt. Post-conviction proceedings are limited to providing a forum for the litigation of constitutional claims that were not presented in the original proceedings. Daley, 123 Ill.2d at 182, 121 Ill.Dec. 937, 526 N.E.2d 131. Defendant's discovery requests go beyond this limited scope and, as a result, were properly denied."
People v. Olinger, 176 Ill.2d 326, 370-71, 223 Ill.Dec. 588, 610, 680 N.Ed.2d 321, 342-343 (1997).
 IX.
Last, the State asserts that Stallworth failed to show good cause for disclosing the following:
 "All documents or information relating to Chief Investigator Jimmie or James Flanagan of the Foley Alabama Police Department; Warren Stewart of the Alabama Bureau of Investigation, and Deputy Sheriff James Stallworth of the Baldwin County, Alabama Sheriff's Department, including, but not limited to:
 "(a) Their employment files regarding their employment; *Page 341 
 "(b) Any and all cases where statements taken by them were challenged for constitutional violations;
 "(c) Any and all cases where evidence was challenged for constitutional violations as a result of their investigative tactics;
 "(d) Any and all cases where the court overturned the defendant's conviction due to their investigative and interrogation tactics; and
 "(e) Any and all cases where the outcome resulted in a jury acquitted [sic] where there was an allegation raised at trial or during the proceeding (pre-trial or post-trial) of wrongful investigative and interrogation tactics."
Stallworth contended in his discovery motion that this information was relevant to bolster his claim that his statements to those law-enforcement officers were coerced. As the State correctly notes in its mandamus petition, Stallworth does not raise any claim in his amended Rule 32 petition that his statements were coerced. Accordingly, Stallworth cannot establish good cause for the disclosure of this information. See Land, supra.
 X.
The Baldwin County District Attorney also argues that the circuit court erred in granting the following discovery:
 "All documents relating to the State's use of peremptory challenges during Stallworth's trial, including, but not limited to, all documents relating to any information gathered about the jury venire persons; and
 "(a) All documents relating to the use of racial criteria in the jury selection process in criminal cases prosecuted in Baldwin County, Alabama, including, but not limited to, charges or racial discrimination in jury selection, grand jury selection, and grand jury foreman selection in cases prosecuted by the Baldwin County District Attorney and staff; and
 "(b) All documents relating to any communication between the State and any petit jury member in Stallworth's trial, before, during, or after the trial."
It cites this Court's opinion in Ex parte Perkins, supra, to support its assertion that documents compiled by the district attorney during voir dire examination are not discoverable.
In Perkins, this Court stated:
 "Alabama has never specifically addressed whether a prosecutor's notes made during voir dire examination are likewise privileged. Our neighboring states of Florida, Georgia, and Mississippi have addressed this issue and have held that a prosecutor's personal notes compiled during voir dire examination are work-product and are not discoverable by the defense. See Pattern v. State, 784 So.2d 380 (Fla. 2000); Thorson v. State, 721 So.2d 590 (Miss. 1998); Foster v. State, 258 Ga. 736, 374 S.E.2d 188
(1988). See also State v. Carter, 641 S.W.2d 54 (Mo. 1982). We join those jurisdictions that hold that a prosecutor's notes compiled during jury selection are privileged and are not subject to discovery."
920 So.2d at 607. We agree with the district attorney; Stallworth was not entitled to the work-product of the district attorney's office.
We have diligently examined the discovery motion and the numerous other documents that were filed with this mandamus petition. It is apparent that the circuit court failed to follow the dictates of Land and subsequent cases that address discovery in postconviction proceedings. The circuit court failed to consider the underlying *Page 342 
issues relevant to each discovery request. The underlying issues, the Alabama Supreme Court stated in Land, are the primary concern when determining whether a petitioner has established good cause for discovery. Some of the confusion may have occurred because the discovery motion and the hearing on the discovery motion occurred before Stallworth filed his amended Rule 32 petition. No new discovery motion was filed after the amended petition was submitted, nor was a new hearing held on the discovery motion. Many of the documents requested in the original discovery motion related to claims that were not pursued in Stallworth's amended petition. While we recognize that Stallworth may be entitled to some of the requested documentation, we cannot say that Stallworth is entitled to the broad and unfettered discovery that was granted in this case.
This case exemplifies the problems caused by discovery in postconviction proceedings. Since the Alabama Supreme Court released its decision in Land, this Court has frequently been called upon to micromanage discovery in collateral proceedings because there is little Alabama law to give guidance to the lower courts. We urge the Alabama Supreme Court to adopt Rules of Court that address the "good cause" standard as it relates to discovery in postconviction proceedings. The federal courts have adopted similar rules. See Rules 6(a), Rules Governing § 2254 Cases in the United States District Courts.
In the event that further discovery proceedings are held in this case, we urge the trial court to comply with the Supreme Court's decision in Land, and this Court's decisions in Perkins, Jackson, and Hooks.
For the foregoing reasons, this petition is due to be, and is hereby, granted. Judge Reid is directed to vacate his order granting the broad and unlimited discovery motion in this case. Our stay issued January 20, 2006, is lifted.
PETITION GRANTED; WRIT ISSUED; STAY LIFTED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
BASCHAB, J., recuses herself.
[1]
 "A post-conviction petition is a collateral attack on a prior criminal conviction by which a defendant can assert that a conviction resulted from the substantial denial of his or her constitutional rights, and the purpose of a post-conviction proceeding is not to appeal the defendant's underlying judgment, but rather to resolve allegations that constitutional violations occurred at trial, when those allegations have not been, and could not have been, adjudicated previously."
People v. Coulter, 352 Ill.App.3d 151, 156, 287 Ill.Dec. 255, 260, 815 N.E.2d 899, 904 (2004).
[2] We note that on direct appeal we specifically addressed Stallworth's claim that his statements were illegally admitted. We stated:
 "There is more than sufficient evidence in the record indicating that the trial court did not abuse its discretion in denying the motion to suppress Stallworth's statements to police. We must defer to the trial court's ruling on questions involving the credibility of witnesses."
Stallworth v. State, 868 So.2d at 1150.
[3] The State asserts that with regard to the curriculum vitae of the State's experts all that Stallworth need do is contact the experts. The State argues, and we agree, that this evidence is available through other sources and should not be the subject of a discovery order in a postconviction proceeding. SeePerkins, supra.
[4] We note that some of this requested discovery would be available in the record on direct appeal.